REMINGTON MACHINE COMPANY, a corporation of the State of Delaware, defendant below, plaintiff in error, *vs.* THE WILMINGTON CANDY COMPANY, a corporation of the State of Delaware, plaintiff below, defendant in error.

*Warranty—Breach—Evidence——Hearsay — Memorandum—Objections to Testimony—Admissibility of Testimony; Conditionally Relevant.*

1. In an action for breach of warranty of a machine for the manufacture of ice, etc., slips showing the amount of ice used in the business, embracing the ice made by the machine and the ice bought, were offered in evidence. The entries on the slips were made by the plaintiff's bookkeeper, in one instance, on information from plaintiff's ice cream man, who received all of the ice made and bought, and in the other instance on information from the plaintiff's soda man, who was supplied with ice by the ice cream man, verified by the ice cream man; *held* that the slips were admissible as auxiliary to the testimony of the bookkeeper and the ice cream man.

2. Entries made on slips of paper by a bookkeeper, on information furnished him by the ice cream man and the soda man as to the amount of ice used, were entries made in the usual course of business by a person who had no interest to misstate what had occurred, and were admissible in evidence, though the entrant was called to testify, if verified and adopted by him, as auxiliary to his testimony, as exceptions to the rules excluding acts, declarations, etc., of third persons.

3. Where the issue is one concerning the capacity of a machine to conform to the warranty under which it was sold, entries made on slips, in

REM. MACH. CO. vs. WIL. CANDY CO.          289

SYLLABI—OPINION.

the usual course of business, were admissible to show the amount of ice used and bought, so that the amount of ice actually made by the machine could be shown by the difference between the ice used and the ice bought.

4.   Slips containing entries not strictly pertinent to the issue—the capacity of a machine sold under a warranty—were offered in evidence and properly admitted for the purpose of showing the amount of ice used by the plaintiff in its business—the ice having been derived from two sources, namely, that made by the machine and that bought—under the promise, at the time of the offer, that the amount of ice bought would be shown so that the ice made by the machine could be shown by the difference between the ice used and the ice bought.

5.   An irrelevant fact, standing alone, may be conditionally relevant in connection with other facts, necessary to its admissibility; and in such case counsel may offer to introduce such irrelevant fact for a specific purpose, coupled with a statement of and promise to introduce other facts necessary to show the relevancy of the fact offered.

6.   Where conditionally relevant testimony is admitted, if opposing counsel does not make application to the Court to strike out such provisional evidence upon failure to introduce other testimony necessary to its materiality, the Court may reasonably conclude that such provisional evidence is regarded as, at least, harmless—and it will not constitute error should the Court fail to withdraw it from the jury.

7.  In an action for breach of warranty of a machine, an objection that it was not operated in accordance with defendant's instructions, during the period covered by the plaintiff's evidence of the incapacity of the machine, not made at the trial and before such evidence is admitted, will be too late.

*(May 6, 1907.)*

NICHOLSON, CH., and SPRUANCE and BOYCE, J. J., sitting.

*J. Harvey Whiteman* and *Victor B. Woolley* for plaintiff in error.

*John F. Neary* and *John W. Brady* for defendant in error.

Supreme Court, January Term, 1907,—(opinion handed down May 6, 1907.)

WRIT OF ERROR to the Superior Court of the State of Delaware, in and for New Castle County.

BOYCE, J., delivering the opinion of the Court:

This was an action of assumpsit brought by the Wilmington

Candy Company against the Remington Machine Company upon an alleged breach of the warranty contained in a contract between the parties for the manufacture, erection and installment of a refrigerating and ice-making machine and plant. The warranty was in the following words to wit:

"We guarantee this plant to be first class in every respect; that it will be capable of doing an amount of work, equal to the melting of six tons of ice per day of 24 hours, when operated in accordance with our instructions; and that while running 12 hours per day, it will be capable of making one ton of ice in the tank supplied, and cooling the rooms while in operation to the temperature required."

The plaintiff prevailed in the Court below, and the defendant, taking bills of exceptions, has filed in this Court an assignment of five errors.

The first charges that the Court improperly admitted, on behalf of the plaintiff, certain documents, called time slips, and designated as "Plaintiff's Exhibit No. 4,"

The second, being directed against the admission of other time slips, designated as "Plaintiff's Exhibit No. 5," is otherwise the same as the first.

The third charges that the said "Plaintiff's Exhibit No. 4" was erroneously admitted, "for the purpose of proving the incapacity of the plant to make ice in the quantity warranted."

The fourth, being directed against the admission of the said "Plaintiff's Exhibit No. 5" is otherwise the same as the third.

The fifth charges that the said plaintiff's exhibits Nos. 4 and 5 were erroneously admitted, "showing the quantity of ice consumed by the plaintiff below in its business, which said ice was proved to have been obtained from two sources, namely, ice made by the ice plant, and ice bought from ice dealers, for the purpose of proving the incapacity of the plant to make ice in the quantity warranted."

The issue raised by the pleadings, was one of fact, affecting the question of the capacity of the said machine and plant to

REM. MACH. CO. vs. WIL. CANDY CO.      291

OPINION.

conform to the warranty, contained in the contract, under which the defendant had installed it for the plaintiff.

At the trial, the plaintiff introduced evidence for the purpose of showing (1) that the said machine and plant had not met the requirements of the said warranty, and (2) that it could not meet them, because of defects in its construction and design.

It was under the first branch of the plaintiff's testimony that the said time slips were admitted in evidence. Before seeking to introduce them, it appears that counsel for plaintiff had shown that a daily record of the amount of ice made by the machine had been kept in the usual course of its business; that the person whose duty it was to to keep such record had not, at that time, been located, and that the record so kept had been mislaid or lost and it was attempted to prove by means of certain other regular entries made by the plaintiff's employees, in the usual course of their employment, the amount of ice made daily by the said machine (from and after June 29, 1903, the plant having been started on May 12th, preceding) (1) by showing the daily amount of ice used by the plaintiff in its business; (2) by showing that all the ice so used was not made by the machine, but had been derived from two sources, namely: ice made by the machine and ice bought from dealers;.and (3) by showing the amount of ice bought daily—the purpose of this method of proof being to show that the amount of ice actually made daily by the machine was the difference between the amount of ice consumed and the amount of ice bought daily. It was in this connection that the said time slips were offered and admitted in evidence. While it appears at another stage of the case, that there were some expressions of uncertainty respecting the purpose for which the slips were admitted, it is manifest that the purpose for which they were offered was well understood, and that they were admitted for the purpose of showing the amount of ice consumed by the plaintiff.

The circumstances under which the ice entries on the said time slips were made by the person who made them; the objections urged against their admissibility; and the object of their

admission may now be stated.  Smith, the ice cream maker for the plaintiff, testified, in substance, that he received daily all the ice made by the machine from the ice tank down the chute to his department; that he marked on a slip of paper kept on a nail for that purpose, each cake of ice made as it came to him; that he marked on the same slip the amount of ice bought, as it was delivered to him; that he was not only required to do this but was also required to keep a daily slip, called a time slip, showing the amount of goods made by him each day; that Mr. Griffenberg, the bookkeeper, in the usual course of getting the day's reports, would come every evening and take the time slips and ask for the amount of ice he had used that day, which he would report to Griffenberg, and that the latter would mark it down on the time slip in his presence; that all the entries on the time slips, except those relating to the ice, were made by him, and that Griffenberg,in his presence and upon his information, made the ice entries on the time slips.   Both Smith and Griffenberg testified as to the manner in which the slips were kept respecting the ice entries, and each testified that they were correct.   Griffenberg was on the stand when the slips known as "Exhibit No. 4" were first offered in evidence.   Counsel for the defendant objected, and so far as the record discloses, for the following reasons:

"The man who has testified as to receiving this ice is Smith, that he kept his account of the original amount, so many hundred pounds per day, and recited what he and this witness would do when they met.   We contend that those slips are nothing more than memoranda for the refreshment of the memory of this witness upon a matter which is clearly hearsay testimony. Smith is the only man that knows, between these two men, as to the amount of ice that came down the chute.   Smith told this gentleman and this gentleman can only testify as to what Smith told him.  Therefore his testimony is hearsay and is not relevant, especially in view of the fact that we have had the testimony of Mr. Smith himself directly upon the point."

The offer was rejected and Smith was recalled and re-examined at length as to the mode of keeping the account of all the ice which came to his department, whether made by the machine or

REM. MACH. CO. vs. WIL. CANDY CO.        293

OPINION.

bought, and the manner of accounting for the same to Griffenberg; and, in answer to the question, "Do you say that the figures on each one of those slips represent the correct amount of ice consumed?" He replied, "Yes sir." Griffenberg being recalled, was asked, among other things, "Are those entries as made by you accurate with respect to the reports given you by Mr. Smith as to the ice?", and he replied, "Yes sir". The offer was renewed, and counsel for the defendant again objected. And so far as the record discloses for the reason that the slips were hearsay evidence, contending that the ability of the defendant to cross examine with respect to the slips was curtailed by reason of the fact that the witness now upon the stand knows nothing about the slips, except what he heard from Smith, who, being off the stand cannot now be cross examined by the defendant." The slips were admitted in evidence "for the purpose of showing the quantity of ice".

The slips, designated as "Plaintiff's Exhibit No. 5", were taken up for the purpose of showing the amount of ice used and charged to the "soda man", who was not produced as a witness. Smith and Griffenberg were examined. The general result of their examination shows that Griffenberg, to obtain daily reports from the soda man as he did from Smith, went to the former for the slips which he was required to keep, and obtained from him information concerning the ice used by him; and then went to Smith to ascertain whether the information thus obtained was correct. The entries on these slips were brought under the inspection of Smith. If the latter found any errors, Griffenberg made correction in the entries from information given him by Smith. Upon this testimony the said slips were offered in evidence, and, it is said in the record that they were objected to "as hearsay, the contention being that the slips were made up in this case from the hearsay evidence of two men, Smith, and an unknown man, the soda man." The offer was rejected. Further testimony respecting the mode of keeping the slips having been introduced, the offer to admit them in evidence was renewed. Objection was made on the ground as before stated, as hearsay evidence; it being contended

that the witness had said he made up these slips from two sources, from Smith and the soda man and the soda man is not here to be cross examined.  It being suggested that Smith was the man charged with the keeping of the account of the ice received and ice used in the plant, the slips were admitted in evidence on the same footing as those first admitted.     In further cross-examination of Griffenberg, it was shown that he did not have any knowledge of the accuracy of the entries upon the slips, respecting the ice used, except such as he had obtained from Smith and the soda man.

Counsel for the plaintiff then sought to show the amount of ice bought each day, during the period covered by the said slips, by offering in evidence successively, (1) the bills rendered to the plaintiff for ice bought; (2) the receipts, showing payments for ice bought; and (3) the plaintiff's book entries of the ice bought; but, each, in turn, was objected to and excluded.  It was at this stage of the case that the expressions, respecting the purpose of the admission of the said slips, to which we have alluded, were made.

The amount of ice which the machine could make, under the conditions required by the warranty, was a pertinent fact to the issue; because such a fact would tend to throw light upon the capacity of the machine.   It was to show the amount of ice made by the machine—by an indirect method, it is true—that the slips were offered in evidence.  Primarily, they were offered for the purpose of showing the amount of ice used by the plaintiff, not, however, as an independent unassociated, fact, but in connection with another fact, promised to be shown, at the time the offer was made,—namely: the amount of ice bought during the period covered by the slips.  It being claimed that with both of these facts established, the amount of ice actually made by the machine could be easily ascertained, it being the difference between the amount of ice used and that bought.   But the plaintiff failed to show the amount of ice bought, and neecssarily failed to show the capacity of the machine by  the method of proof it had pursued.  It, therefore, became necessary to proceed in a different method which it did, but with which we are not concerned, the

REM. MACH. CO. vs. WIL. CANDY CO.     295

OPINION.

errors assigned in this case, being confined to and directed against the admission of the said time slips, under the circumstances substantially as stated.

Counsel for the defendant contended that the said exhibits were not admissible for two reasons. We can, perhaps, at this point, better consider and dispose of the the second of these, before taking up the several branches contained in the first. The second reason is, "If it be granted for the purpose of the argument that the matter and thing recorded upon the time slips, was a proper subject matter of evidence, then it was not competent to prove the same by the time slips themselves, but only by the person who was the original source of such information, and the time slips could be legally used for no other purpose than to refresh the memory of the witness."

Assuming for the present that the said time slips, so far as they related to the ice used by the defendant, were relevant and material, were they themselves admissible in evidence as auxiliary to the testimony of the witness who made them, supported by the testimony of the witness upon whose information the ice entries thereon had been made, or should they have been used only to refresh the memory of the witness?

The question presented, affecting, as it does, the admissibility of entries made in the regular course of business or employment, is, in a measure, at least, of first impression in this Court. And because of the conflict and want of harmony among the decisions, we have experienced considerable embarassment in arriving at a conclusion based upon some sound principle. We have for this purpose examined into the origin and expansion of the principle of the hearsay exception applicable to this question, as thoroughly and stated our review as briefly as we well could, in view of the citations it has been deemed essential to incorporate. In pursuing this course, we have necessarily gone out side of the question immediately before us, in order to show the origin and development of the principle, which should control our judgment in determining the question under consideration.

In the argument, our attention was directed to some of the rules, respecting the admissibility of parties' books of accounts.

Such books have been and are received in evidence under the decisions of Courts, or by express legislative enactments. In this State the subject is regulated by a statute too familiar to require further notice. The principle recognized and adopted for the admission of such books, in the absence of a statute, like that applied to questions similar to the one before us, had its origin, it is true, among the hearsay exceptions. And in that sense the two were related—were analogous—but were never identical. We must, therefore, look beyond the shop book rule for the solution of the question now presented.

We find it generally held in this country and in England, that entries, made in the regular course of a person's business or employment, are admissible in evidence on proof of the handwriting of the entrant, after his death. This principle was recognized and adopted early in this country. The two leading cases are *Welsh vs. Barrett,* 15 *Mass.* 380, and *Nicholls vs. Webb,* 8 *Wheat.* (*U. S.*) 326.

Parker, C. J., In the first of these cases, said: "The principle seems to be founded in good sense and public convenience. What a man has said when not under oath, may not in general be given in evidence, when he is dead; because his words may be misconstrued and misrecollected; as well as the cause cannot be known that he was under any strong motive to declare the truth. But what a man has actually done and committed to writing, when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting it to the jury".

In the other case, Story, Justice, said: "We think it a safe principle, that memorandums made by a person in the ordinary course of his business of acts or matters which his duty in such business requires him to do for others, in case of his death, are admissible evidence of the acts and matters so done."

Subsequently, in the leading case of *Doe vs. Turford,* 3 *Barn.* and *Adol.* 898, Taunton, Justice, said: "A minute in writing, made at the time when the fact it records took place, by a person since deceased, in the ordinary course of his business,

REM. MACH. CO. vs. WIL. CANDY CO.          297

OPINION.

corroborated by other circumstances which render it probable that the fact occurred, is admissible in evidence."

This principle of the hearsay exception was early recognized by our own courts. In the case of *Bank of Wilmington and Brandywine vs. Bradun*, cited in 1 *Harr.* 14, the register of a deceased notary which contained a copy of the note sued upon, on which was entered, "10th of October 1818, noted, protested and returned to bank", after the proof of his handwriting and death, was, against objection, admitted in evidence. And in the case of *Bank of Wilmington and Brandywine vs. Cooper's Administrator*, 1 *Harr.* 16, the record of the notary was admitted in evidence of all the facts it furnished "as to the time, manner, etc., of notice", by reason of his death.

This rule prevails generally, but the American decisions are inharmonious upon the question of the expansion of the principle beyond the requirement of the death of the entrant. Many of the Courts have, however, expanded it so as to include within it, cases of insanity, incompetency and unavailability of the entrant.

In *North Bank vs. Abbott*, 13 *Pick.* (*Mass.*) 471, Shaw, C. J., said: "It was satisfactorily proved, not merely that the witness was out of the jurisdiction of the Court, but that it had become impossible to procure his testimony. We cannot distinguish this, in principle, from the case of death or alienation of mind. The ground is the impossibility of obtaining the testimony, and the cause of such impossibility seems immaterial." Mr. Wigmore says: "The general principle should recognize practical inconvenience as an excuse, subject to the Judge's discretion to require the entrant's production for cross-examination when the nature of the dispute renders it desirable."

*Wig. on Ev., Vol.* 2 *Sec.* 1521.

Thus far the exceptions are based upon the principle of necessity, considered in connection with the circumstances under which such entries were made which, obviously, furnish some guarantee of their validity and trustworthiness.

In some of the American jurisdictions, a further expansion of this principle has been recognized. And we find that some

of the better considered cases, following the development of the principle in logical sequence, have extended it by admitting such entries, during the the life of the entrant, when verified and adopted by him, though he does not have a present recollection of the facts contained therein. In other jurisdictions such entries are not admissible in evidence, during the life of the entrant and can only be used , even when they fail to refresh the memory, as a pretext, we may say, for that purpose. No difficulty is presented by the cases when the entries produce an actual, present recollection of the facts therein stated. In such case the witness is required to testify from his recollection revived, it may be, by such entries, and the record of the entries is in no sense evidence. The cases are out of harmony, at the point, where such entries, being presented to the witness, fail to stimulate an actual, present recollection of the matters once recollected and recorded by him, but which present to his mind a record simply of a past recollection.

The principle of the admission of this latter class of entries, during the life of the entrant, has been frequently recognized. In *Shove vs. Wiley*, 18 *Pick.* (*Mass.*) 558, was involved the question of the admissibility of an entry made by a clerk in a book kept at the bank for that purpose. The clerk on cross examination stated that he had no particular recollection of the transaction, independently of the entry he found in the book, but that from his habit of transacting business, etc., he had no doubt the notices were left. Shaw, C. J., said: "It is very obvious to remark, that if such evidence is not sufficient, it would be extremly difficult to prove such acts done * * * It is very clear that this is such a book, as would of itself, be evidence of the fact, if the witness were dead * * * . The book offered * * would become admissible, according to the cases cited, on proof of the handwriting of the clerk, in case of his death, insanity, or other incapacity to testify; and we think, it not less so when authenticated by himself".

The case of *Redden vs. Spruance*, 4 *Harr.* 265, was cited and commented upon by counsel for both plaintiff and defendant.

REM. MACH. CO. vs. WIL. CANDY CO.     299

OPINION.

At the trial of this case, a question as to the admissibility of the contents of a letter, detailing a conversation which the writer had had with one of the defendants, was raised, it appearing that the writer as a witness was unable to swear to any of the facts from memory, though he was willing to swear to the truth of the letter from confidence in his own veracity.   The question was reserved and it was subsequently heard before the Chancellor and all the Judges.   Harrington, Justice, in annoncing the unanimous opinion of the Court, said:   "The general rule of evidence is not questioned that the witness must swear to facts within his own knowledge, though his memory may be refreshed, and his knowledge verified, by reference to written memorandum.   Further than this the memorandum or writing cannot be used; except in cases where it was made in the usual course of business as evidence of the fact to be proved; as in book entries, notes of presentment, protest, etc.,   *   *   *   . So where the question was whether a bill of exchange had passed through a banker's hands, his clerk was allowed to prove his own writing on it though he did not recollect it.   Also with regard to inventories and schedules; precise dates; particular words, and other matters which the memory would not be likely to retain, a greater liberty of reference has been allowed where the notes were made at or about the time of the transaction, and where the witness remembers that at the time they were made he knew them to be correct and true.   This seems to be carrying the principle of substituting memorandums for the sworn recollection of witnesses far enough.   It has been done from the apparent necessity of cases occuring so often as to form classes."

In the case of *Hatfield vs. Perry*, 4 *Harr*. 463, the proof was by depositions upon interrogatories.   The proof of the presentment and protest of the notes sued upon was objected to.   "The proof was (1) the notes with the notary's certificate of presentment, demand, refusal and protest; (2) the deposition of S. Badger, notary, stating that the notes were presented at the place of payment by Edward Barton, his clerk; (3) the deposition of Edward Barton stated:   'I have no doubt that I presented the notes at Western Bank of Philadelphia for payment, when they

severally became due.   By referring to the book of protests belonging to Samuel Badger, Esq., to whom I was then a clerk, I find that I have returned that the said notes were not paid on my demand, and that payment was refused at the bank by its officers. The signature  signed to each of the certificates marked C and D is in the handwriting of Samuel Badger, and the seal is his seal as a Notary Public. The certificates contain the answer made by the officers of the bank when the said notes were severally presented for payment by me.' " It was said by the Court, "the certificates of presentment, demand, and refusal, would not in themselves be evidence of these facts; but the notary and his clerk have been examined on commission, and the clerk's deposition so refers to and incorporates these certificates as to make it necessary to refer to them as a part of his answers.

"The clerk's reference to the notarial book must be admitted also from necessity, as a memorandum made at the time for the purpose of evidence, by a person,  and on a subject which make the admission of such evidence necessary, as the memory of a notary in full business could not retain  recollection ' of such matters.

"Entries made in books in the course of official duty, or in the course of professional employment are admissible in evidence in regard to those matters, which it was the duty or the business of the party to do.

"Therefore entries made in the ordinary course of business in the books of the Notary Public, are admissible to prove a demand of payment from the maker and notice to the endorser of a  promissory note.   (Cases cited).   If the notary is living and competent to testify, it is deemed necessary to  produce him.   But if he is called as a  witness to  the  fact, the entry of it is not thereby excluded.   It is still an independent and original circumstance to be  weighed  with  others,  whether it  goes to  corroborate or to impeach the testimony of the witness, who made it."

In some jurisdictions where the principle of the admission of this class of entries has been recognized during the life of the entrant, it is first required that it be shown that the entrant is unable to distinctly recollect the  fact or transaction with the aid of

the entries. And the principle is not applicable when the entrant has a distinct recollection of the essential facts to which the entries relate. Whenever the principle is applied, the better opinion seems to be to regard the admission of such entries in evidence as auxiliary to and as essentially the oath of the witness.

In those jurisdictions where such entries can only be used, during the life of the entrant, to refresh his memory, whether they do in fact or not, both Mr. Greenleaf and Mr. Chase (the latter in his edition of *Stephens on Evidence*) divide the cases into three classes. In the case of *Davis vs. Field*, 56 *Vt.* 426, it is said: "There seem to be two classes of cases on this subject. 1. Where the witness by referring to the memorandum has his memory quickened and refreshed thereby, so that he is enabled to swear to actual recollection; 2. where the witness after referring to the memorandum undertakes to swear to the fact, yet not because he remembers it, but because of his confidence in the correctness of his memorandum. In both cases the oath of the witness is the primary, substantive evidence relied upon; in the former the oath being grounded on actual recollection, and in the latter on the faith reposed in the verity of the memorandum". As we have already indicated much of the confusion has arisen in cases of the latter character.

The Court in *Redden vs. Spruance* (*supra*), while it did not have before it the question of the admissibility of regular entries, made in the course of employment such as we have in this case, did, however, recite with apparent approval the result reached in the American note to *Price vs. Lord Torrington*, in Smith's leading Cases, which is, "that entries made in the regular and usual course of business are admissible in evidence, after the death of the person who made them, on proof of his handwriting, and during his life if authenticated by himself"; to which is added in recognition of a further distinction made in some jurisdictions between regular and occasional or isolated entries,—"other entries may be used to refresh the memory, but are not admissible in evidence."

In *Hatfield vs. Perry* (*supra*), the clerk of the notary, in giving his testimony, referred to the book of protests and gave in

evidence his entries found there—apparently read them—adopted them as the embodiment of his testimony—and did not use them as a pretext to refresh his memory.    The Court held that the entries were admissible, and said: "If the notary is living and competent to testify, it is deemed necessary to produce him.    But if he is called as a witness to the fact, the entry of it is not thereby excluded.    It is still an independent and original circumstance to be weighed with others."    We think that the extension of the exception to such regular entries, in the lifetime of the entrant, if verified and adopted by him is sustained by principle and the weight of authority.

The witness Griffenberg had no personal knowledge of the accuracy of   the entries respecting the ice recorded on the slips by him.  He made them, in one instance, on information from Smith, and, in the other, on information from the soda man, verified by Smith.   The combined testimony of  Smith and Griffenberg was sufficient for the admission of both of the said exhibits Nos. 4 and 5, as auxiliary to, and complementary of, their testimony, if they were relevant and material.   It does not appear whether Smith had a present  recollection of the quantities of ice used by him and the soda man as entered upon the said exhibits respectively, either with or without their aid.    There were a great many of the daily entries, covering a  period of several months, and it would have  been quite impossible to retain them in memory.    If the witnesses each knew they were correct, at the time they were made, and they, or either of them, had been permitted to use them to assist the memory, and had given testimony of the quantities stated on  the  slips, either  from memory or by reading them, it is difficult to see why the slips  themselves, verified and adopted, as they were by the witnesses, were not as trustworthy, and as harmless to the defendant, as the testimony of the witness would have been.

In the case of *State vs. Bradley*, 100 *Iowa* 191, it was said, "the old common law rule seemed to be that such memoranda were not admissible; that they could be read by the witness after proper foundation had been laid, even though the witness had no recollection of the matters, after having read them.   The modern

REM. MACH. CO. vs. WIL. CANDY CO.        303

OPINION.

doctrine, at least, in this country, seems to be that such documents are admissible in evidence, and that the Court will not go through the useless ceremony of having the witness read a document relating to a fact of which he had no present recollection, except that he knew it was correct when made."

Hammersly, J., in considering this subject, said, in the case of *Curtis vs. Bradley*, 65 *Conn.* 99: "It seems to us to be pressing the use of a legal fiction too far for a Court to permit the statement made by such paper to be read in evidence, while holding that the law forbids the admission as evidence of the paper which is the original and only proof of the statement admitted.    *    * When, in the application of the rule, a document like the one in question was presented to a witness, and absolutely failed to refresh his memory, its exclusion as a means of refreshing his memory became imperative, but the evidence of the document was so clearly essential to a fair and just trial that its use in some form seemed absolutely imperative."

*Owens vs. State*, 67 *Md.*, 307, presents a case where the witness testified independently of the entries made by him and introduced in evidence in connection with his testimony.   The Court said: "It has been urged in argument that the entry or memorandum can only be used where the witness has no present independent recollection of the transaction referred to" (the same contention was made in this case), " but its admissibility depends upon no such distinction.   If the witness swears that he made the entry or memorandum in accordance with the truth of the matter, as he knew it to exist at the time of the occurrence, whether he retains a present recollection of the facts, or not, the entry or memorandum is admissible; for though he may have a  present recollection (of doubtful or varying degree of certainty, it may be) independently of the memorandum the paper is admissible as a means of verification or confirmation of what he states from memory".

*Insurance Cos., vs. Weilds*, 14 *Wall.* 380; *Donovan vs. Boston*, etc., *R. R. Co.* 158 *Mass.* 450; *Diament vs. Colloty*, 66 *N. J. L.* 295; *Calahan vs. Washington Water Power Co.*, 27 *Wash.* 154; *Firemen's Insurance Co., vs. Seaboard Air Line Railway Co.*, 138

*N. C.* 42; *Mayor, etc., N. Y. vs. Second Ave. R. R. Co.,* 102 *N. Y.* 572.

It was contended in the first instance that said exhibits were not admissible in evidence because the matter and thing recorded upon the time slips is not a proper subject matter of evidence, for four reasons, namely, (1) it is incompetent; (2) the entries were made by the party in its own interest and not in a matter between it and the defendant; (3) it is *res inter alios acta*; (4) it is hearsay. We will consider these several objections in the reverse order: (4) if the entries were relevant and material, they were admissible under an exception to the hearsay principle, such as we have already indicated. (2 and 3) These will be disposed of together. Such entries made in the usual course of business by a person who has no interest to mis-state what had occurred, are admissible in evidence, after the death of the person who made them, on proof of his handwriting; and, during his life, if verified and adopted by him, as auxiliary to his testimony, as exceptions to the rules excluding acts, declarations, etc., of third persons. (1) Lastly, were the time slips competent? The issue in this case was one concerning the capacity of the machine to conform to the warranty when operated in accordance with defendant's instructions. The slips were offered and admitted in evidence for the purpose of showing the amount of ice consumed by the plaintiff in its business,—the same having been derived from two sources, namely: ice made by the machine and ice bought—under the promise made at the time of the offer that the plaintiff would show the amount of ice bought so that the amount of ice actually made by the machine could be shown by the difference between the ice consumed and the ice bought. The slips, offered in this way, were not, strictly speaking, matters pertinent to the issue—the capacity of the machine; but, under the promise made to show the amount of ice bought, they did tend to show the amount of ice made by the machine. An irrelevant fact standing alone may be conditionally relevant in connection with other facts necessary to its admissibility. And, in such case, counsel may very properly offer to introduce such irrelevant fact for a specific

REM. MACH. CO. vs. WIL. CANDY CO.          305

OPINION.

purpose coupled with a statement of the other facts necessary to show its relevancy. "It constantly happens", says Mr. Wigmore, "that an evidential fact is relevant, not with direct reference to an allegation in the pleadings, but only through its connection with other subordinate facts. Without them, it is irrelevant, and, therefore inadmissible, * * * .The possibility that the other facts may not be made good is a necessary risk to be taken, and in case of a failure to make them good, the subsequent striking out of the evidence offered is regarded as an adequate remedy".—3 *Wig. on Ev., Sec.* 1871.

Counsel for the plaintiff, it appears, failed to make good their promise to show the amount of ice bought. The slips, therefore, were, independent of such proof, irrelevant and inadmissible. They might have been stricken from the evidence. That was not done. Was it error on the part of the Court not to have withdrawn them from the jury? We think not. In such event, if opposing counsel does not make application to the Court to strike out the provisional evidence, upon failure to prove other facts necessary to its materiality and admissibility ,the Court may very reasonably conclude that such evidence is regarded, at least, as harmless, if not favorable. In the case of *Stone vs. State*, 118 *Ga.* 705, it was said: "Where incompetent evidence is admitted on the statement that it will be subsequently connected and made admissible, it is the right of the objecting counsel to renew his motion at a later stage of the trial; and if the connection has not been made, it will then be the duty of the Court to exclude the testimony with proper instructions to the jury not to be influenced thereby. But it cannot be expected that in a long and tedious trial the Court should bear these matters in mind, and of his own motion, exclude what has thus been provisionally admitted. It is for counsel interested to remind him of the circumstances and have it ruled out, if he so desires."

Objection that the machine was not operated in accordance with the defendant's instructions during the period covered by the slips, does not appear to have been made at the time the slips

were offered and admitted in evidence. And such objection comes too late here. The Supreme Court of the United States has held that "the objection, 'incompetent', 'immaterial', and irrelevant' " is not specific enough.

*New York, etc. Equipment Co. vs. Blair*, 51 *U. S. App*. 86; *Noonan vs. Mining Co.*, 121 *U. S.* 393; *Agafus vs. Porter*, 84 *Fed.* 430.·

The weight of authority is to the effect that counsel should state specifically his ground of objection to the admission of testimony to the trial Court.

We find no reversible error in the record of the proceedings of the trial Court; and the judgment below is, therefore, affirmed.