REUBEN GROSSMAN, Administrator of Leah Grossman, deceased, *v.* DELAWARE ELECTRIC POWER COMPANY.

(*April* 3, 1929.)

HARRINGTON, J., sitting.

*James R. Morford* (of Marvel, Morford, Ward & Logan) for plaintiff.

*Clarence A. Southerland* and *William S. Potter* (both of Ward and Gray) for defendant.

Superior Court for New Castle County, March Term, 1929. No. 141, May Term, 1928.

At a later date the trial Judge filed the following opinion in connection with his ruling:

HARRINGTON, J.: The objection of the plaintiff's attorney raised two questions:

1. Was the Leah Grossman, who was examined by Dr. Charles M. Glassmire at the Presbyterian Hospital in Philadelphia in 1927 the same Leah Grossman, whose Administrator is the plaintiff in this action?

2. Though the person so examined was the same person whose Administrator is the plaintiff in this action, were the hospital records offered admissible in evidence, or should they be rejected under the hearsay rule?

While I will not take the time or space to analyze the evidence in the record or the testimony in the depositions offered, as I view it, taking the two together, the question of identity has been established.

Before passing on the other question some consideration of the principles involved may be useful. Entries made by third persons having actual knowledge of the facts in the regular course of business, official duty, or professional employment, at or about the time that the acts or transactions recorded took place, when relevant to the issue and properly verified, have long been regarded in both England and America as exceptions to the hearsay rule, and admitted in evidence, even though such entries were not against the interest of the person who made them. *Bank of Wilmington & Brandywine v. Bradun,* 1 *Harr.* 14; *Bank of Wil. & Brandywine v. Cooper's Adm'r,* 1 *Harr.* 16; *Redden v. Spruance,* 4 *Harr.* 265; *Hatfield v. Perry,* 4 *Harr.* 463; *Remington Mach. Co. v. Wilmington Candy Co.,* 6 *Penn.* 288, 66 *A.* 465; *Price v. Lord Torrington (Salkeld* 285), *Smith's Leading Cases, vol.* 1, *Part* 1, 563, and note; *Doe v. Turford,* 3 *Barn. & Ad.* 898; *Lassone v. B. & Lowell R. R. Co.,* 66 *N. H.* 345, 24 *A.* 902, 17 *L. R. A.* 525; *Lebrun v. B. & M. R. R. Co.,* 83 *N. H.* 293, 142 *A.* 128; *Doe v. Hawkins,* 2 *Q. B. D.* 112 (114 *Eng. Rep.* 83); *Fenerstein v. U. S.,* 70 *U. S.* (3 *Wall.*) 145, 18 *L. Ed.* 121; 53 *L. R. A.* 530-543, etc., note.

This rule has been applied by both the civil and criminal courts to a great variety of cases. *Wigmore on Ev.*, vol. 2, § 1523, etc.; *Chamberlayne on Ev.*, vol. 4, §§ 2898 *to* 2909; 2 *Enc. of Ev.* 676; 5 *Enc. of Ev.* 268, etc.; *Greenleaf on Ev.*, vol. 1, §§ 403, etc.; 53 *L. R. A.* 526-530, note; *Saunders on Pleading and Ev.*, vol. 2, page 747, etc.

In fact, from the above citations, it is apparent that where a regular business habit to make them is shown, the entries offered not only need not be of a purely mercantile character, but they need not even be of a secular nature. The latter principle is illustrated by *Kennedy v. Doyle,* 10 *Allen (Mass.)* 161, where, as one of the duties of his office, a parish priest had regularly and habitually kept a baptismal record, and after his death this record was admitted to show the date of baptism of a person. See, also, *Weaver v. Leiman,* 52 *Md.* 708; *Blackburn v. Crawford,* 3 *Wall.* 175, 18 *L. Ed.* 186; *Chamb. on Ev.*, vol. 4, § 2876.

Mere private and personal memorandums having no connection with the business, official duty, or professional employment of the entrant, are, however, not within this rule, though habitually kept. *Remington Mach. Co. v. Wil. Candy Co.,* 6 *Penn.* 288, 66 *A.* 465; *Terry v. Amer. Fruit Growers Association,* 3 *W. W. Harr.* (33 *Del.*) 497, 139 *A.* 259, note; *Wigmore on Ev.*, § 1530; *Chamb. on Ev.*, vol. 4, §§ 2876, 2894, 2908.

Apparently differing from the shopbook rule, it must be conceded that regular entries are not primary evidence but are treated as secondary evidence of the acts or facts recorded. *Chamberlayne on Ev.*, vol. 4, §§ 2870, note; 2875 to 2878, 2891, note; 3067; *Nicholls v. Webb,* 8 *Wheat.* 326, 5 *L. Ed.* 628; *Welsh v. Barrett,* 15 *Mass.* 380.

Before secondary evidence of any kind can ever be admitted, two essential conditions must be satisfied:

1. Some reasonable necessity for its use to prove the desired facts, instead of proving them by the direct testimony of witnesses, must appear.

2. If the necessity element is satisfied, some reasonable guarantee of the trustworthiness of the evidence offered must also ap-

pear. *Wigmore on Ev.*, § 1521; *Chamberlayne on Ev., vol.* 4, §§ 2878 to 2882; *Roberts v. Claremont Power Co.*, 78 *N. H.* 491, 102 *A.* 537; *Bank of Wil. & Brandywine v. Bradun*, 1 *Harr.* 14; *Bank of Wil. & Brandywine v. Cooper's Adm'r*, 1 *Harr.* 16. See, also, *Redden v. Spruance*, 4 *Harr.* 265; *Hatfield v. Perry*, 4 *Harr.* 463; *Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 66 *A.* 465.

Where regular entries are involved, the second element is usually satisfied by proof of the circumstances under which they are made; that is where no special motive to misrepresent appears, by proof that they were made in the regular and usual course of business or professional employment of the person who made them. *Wigmore on Ev.*, §§ 1522, 1523; *Chamberlayne on Ev., vol.* 4, pages 2888-2891, note; *Roberts v. Claremont Power Co.*, 78 *N. H.* 491, 102 *A.* 537; *Lebrun v. B. & M. R. R. Co.*, 83 *N. H.* 293, 142 *A.* 128; *Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 66 *A.* 465.

The necessity for the use of such entries is usually shown by proof of the death of the person who made them, but absence from the jurisdiction, illness, insanity and even other reasons have sometimes been held to justify their admission. *Wigmore on Ev.*, § 1521; *Chamberlayne on Ev., vol.* 4, § 2878, etc.; *Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 297, 66 *A.* 465.

Questions as to what recorded facts were within the actual duty of the person recording them and what were simply collateral and unnecessary entries, and, therefore; not admissible, have often been discussed by the courts, but need not be considered here.

I might state, however, that the American courts have been much more liberal in this respect than the English courts and that where the portions of record entries, though not actually required, and in a sense collateral, are so related that their entry would naturally accompany the record of the main transaction, they are usually admissible in this country. *Chamberlayne on Ev., vol.* 4, §§ 2876, 2877.

In most cases the application of the so-called regular entry rule has involved written memorandums, but in England and in a few states in America, including this state, its principles have been

distinctly held to include oral reports, if shown to have been made in the regular course of business and at or about the time the acts reported took place. The fact that they were oral rather than written merely being held to affect their weight. *Chamberlayne on Ev.*, *vol. 4*, § 2897; *Wigmore on Ev.*, § 1528; *Williams v. Walton & Whann Co.*, 9 *Houst.* 322, 32 *A.* 726. See, also, *Terry v. Amer. Fruit Growers Ass'n*, 3 *W. W. Harr.* (33 *Del.*) 497, 139 *A.* 259, note.

When written memorandums are offered in evidence, proof of the handwriting of the deceased or absent witness is, also, essential to the admission of entries made in the regular course of business. *Nicholls v. Webb*, 8 *Wheat.* 326, 5 *L. Ed.* 628; *Redden v. Spruance*, 4 *Harr.* 265; *Hatfield v. Perry*, 4 *Harr.* 463; *Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 66 *A.* 465.

In the note to *Price v. Lord Torrington, Smith's Leading Cases*, *vol. 1, part 1, pages* 572, 573, 582, the statement appears that in America the necessity principle applicable to regular entries has been so far extended that even though the person who made them may be living and called as a witness, if he verifies his handwriting and testifies that he cannot remember the facts recorded, whether this be by reason of the lapse of time, the details involved, or otherwise; and further testifies that he was familiar with the facts at the time and that they were then correctly recorded, the record entries are admissible under that rule.

Material record entries made in the usual course of business or professional employment at or about the time the transaction recorded took place, or at least at a time when it would be reasonable to assume that the facts in the record were fresh in the mind of the entrant (*Redden v. Spruance*, 4 *Harr.* 265; *Terry v. Amer. Fruit Growers Ass'n*, 3 *W. W. Harr.* [33 *Del.*] 497, 139 *A.* 259, note), when verified on oath by the person who made such entries have long been admissible in this State. *Redden v. Spruance*, 4 *Harr.* 265; *Hatfield v. Perry*, 4 *Harr.* 463; *Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 66 *A.* 465. Prior to the decision in the *Remington Machine Co.* case, 6 *Penn.* 288, 66 *A.* 465, the principle on which such entries were admitted where the

person making them was alive, in the jurisdiction of the court, and called as a witness was not perfectly clear, though they were apparently considered as coming within the regular entry rule. *Redden v. Spruance*, 4 *Harr.* 265; *Hatfield v. Perry*, 4 *Harr.* 463.

True, the written memorandums admitted in that case were regular business entries made in accordance with the usual custom or habit of the persons making them and were in terms treated as coming under an exception to the hearsay rule; but though the above-mentioned note to *Smith's Leading Cases* was referred to, such entries were expressly admitted as having been adopted by the witnesses as a record of a past recollection and as auxiliary to and complementary of their testimony. The court, therefore, apparently adopted and applied the principles of *Wigmore's* so-called past recollection recorded rule. *Wigmore on Ev.*, §§ 734, 737, 738, 747, 754, 757; *Chamb. H. B. on Ev.*, § 1098. See, also, *Terry v. Amer. Fruit Growers Ass'n*, 3 *W. W. Harr.* (33 *Del.*) 497, 139 *A.* 259, note. A specific analysis of the *Remington Machine Co.* case would seem to be unnecessary, but the conclusion of the court is largely based on the earlier Delaware cases of *Redden v. Spruance*, 4 *Harr.* 265, and *Hatfield v. Perry*, 4 *Harr.* 463, and when clearly understood it appears that, strictly speaking, neither the regular entry rule nor any other rule of secondary evidence was applied.

The court pointed out that in *Hatfield v. Perry*, the Clerk of the Notary in giving his testimony, on a deposition, had referred to the books of protest of such Notary, apparently kept by the Clerk, as well as to the original protest certificates made out by the Notary himself and had read and adopted them as the embodiment of his testimony instead of using them "as a pretext to refresh his memory"; and as I have already stated, held that the memorandums in the *Remington* case had been properly admitted by the lower court, on that ground.

The same general principle applied in the above cases was, also, applied in *State v. Rash*, 2 *Boyce* 77, 78 *A.* 405, though to different facts, and in *Frick, Adm'r, v. Miller*, 7 *Boyce* 366, 107 *A.* 391.

In the *Rash* case certain stenographers were not only called to the stand with their transcribed notes of the prior testimony of

the defendant, both taken before a Deputy Attorney-General of this state and in a previous court proceeding, but such notes, though objected to by the defendant's counsel, in a prosecution for perjury, were admitted in evidence for the purpose of contradicting the defendant.

In *Frick v. Miller,* the defendant in an action of replevin was called to the stand and verified a book, apparently kept by him, containing a list of certain articles of furniture, which he claimed he had purchased from a third person and still owned. This book was admitted in evidence.

*Wigmore* in his work on evidence, §§ 736, note, and 747, note, also points out that *Redden v. Spruance,* 4 *Harr.* 265, recognized the principles of the past recollection recorded rule, though the court refused to apply it in the case before it.

Some of the most usual examples of the application of this rule are, also, pointed out in *Wigmore on Ev.,* § 737.

I might add that the facts involved in both *State v. Rash* and *Frick, Adm'r, v. Miller* come within the list of examples referred to in that section of *Wigmore,* and that neither of these cases are in any way inconsistent with the decision of the Supreme Court in the *Remington Machine Co.* case.

A memorandum to be admissible under the past recollection recorded rule must, of course, represent the personal knowledge and recollection of the witness at the time that it was made; and the circumstances must be such that this fairly appears from the testimony. *Wigmore on Ev.,* § 747.

If this requisite clearly appears, as a general rule, it is not necessary that such memorandum should have been actually made by the witness himself. *Wigmore on Ev.,* § 748.

This general principle was applied in connection with the protest certificates referred to by the clerk, though drawn by the Notary, in *Hatfield v. Perry,* 4 *Harr.* 463, *supra.*

In most cases in order to make sure that the record offered is in fact the embodiment of the past recollection of the witness, the original memorandum must be produced, if available. *Chamb. H. B. on Ev.,* § 1098; *Wigmore on Ev.,* § 749.

There may, however, be exceptional cases where a copy can be used if the original has been lost, or for some other reason is unavailable. *Wigmore on Ev.*, § 749. See, also, *Terry v. Amer. Fruit Growers Ass'n*, 3 *W. W. Harr.* (33 *Del.*) 497, 139 *A.* 259, note.

*State v. Rash*, 2 *Boyce* 77, 78 *A.* 405, where the transcribed notes of the stenographers were admitted would seem to be a concrete example of the permitted use of a copy in place of the original notes made by the witnesses.

*Redden v. Spruance, et al.*, 4 *Harr.* 265, was decided by the old Court of Errors and Appeals in 1845. Presley Spruance and others were the owners of a stage running through the state, and one of the defendants, Jefferson, was an agent of that line. The plaintiff claimed that a colored man belonging to him had been transported out of the state by the stage line, though Jefferson, its agent, then knew that the man belonged to the plaintiff. The plaintiff thereupon brought an action on the case against the owner of the line and also joined Jefferson, its agent, as a party defendant. In order to show the admission of Jefferson that the colored man had passed through New Castle in the stage coach and that a passenger had told him that he belonged to the plaintiff, a witness was called to the stand and asked about his conversation with Jefferson at that time. The man had disappeared in 1839 and the witness at first had no recollection whatever of having talked to Jefferson or of any statements made by him regarding him. He was then shown a letter dated May 30, 1839, purporting to have been written by him to the plaintiff. He recognized his writing, admitting that he wrote the letter and remembered that he had talked with Jefferson just before writing it, but he did not remember any of the details of the conversation and his memory was not refreshed by the letter. He was willing to swear, however, that the contents of the letter must have been true because he was sure he would not have written anything that was not true. The letter was then offered in evidence by the plaintiff but was rejected by the court and that ruling was sustained by the Appellate Court. Judge Harrington wrote the opinion of the court and said:

"The general rule of evidence is not questioned, that the witness must swear to facts within his own knowledge, though his memory may be re-

freshed, and his knowledge verified, by reference to written memorandums. Further than this the memorandum or writing cannot be used; except * * * "

1. In case where it was made in the usual course of business as evidence of the fact to be proved; as in book entries, notes of presentment, protest, etc.

2. Where it was made with the knowledge and concurrence of the party to be charged for the purpose of charging him.

3. Where the verification of the writing itself establishes the fact to be proved, as in the case of the attestation of solemn instruments.

(In connection with this paragraph, the court then added: "So where the question was whether a bill of exchange had passed through a banker's hands, his clerk was allowed to prove his own writing on it, though he did not recollect it.")

4. Also with regard to inventories and schedules, precise dates, particular words and other matters which the memory would not be likely to retain, a greater liberty of reference has been allowed where the *notes were made* at or about the time of the transaction, and where the witness remembers that at the time they were made he knew them to be correct and true.

The court then further said:

"This seems to be carrying the principle of *substituting memorandums for the sworn recollection of witnesses far enough*. It has been done from the apparent necessity of cases occurring so often as to form classes; but none of the cases heretofore adjudged to be exceptions to the general rule of evidence, have come up to the proposition now before us, that a statement of facts in a letter written by a witness, shall be evidence of those facts, merely because he will attest his own general veracity, though he cannot recollect anything about them."

In referring to the letter the court also said:

"It was made for no purpose of perpetuating testimony; from no necessity in the usual course of business; by no one connected with the defendants; by a third person in casual correspondence with the plaintiff; not under oath; not subject to cross examination; and which cannot now be the subject of a cross examination, for the memory of the writer is a blank as to every matter contained in the letter."

The letter in this case was, therefore, apparently excluded, in part at least, because no question of regular business habit was in-

volved and the witness merely relied upon his confidence that he would never have written anything but the truth. Whether this limitation on the general rule admitting a record of a past recollection when verified by the person who made such record is a logical one need not be considered in this case, or in a lower court.

Perhaps I might state, however, that while conceding that a somewhat similar limitation on the general rule exists in Massachusetts, Mr. Wigmore criticizes such limitation and claims that it does not rest on a solid foundation.

In fact it would seem from the language used in the opinion in *Redden v. Spruance,* and already referred to, that the same requisite of regular business habit would not have been applied by the court to the use of *notes* made of the contents of "inventories and schedules," or of "precise dates; particular words, and other matters which the memory would not be likely to retain."

Further than that, the question before the court would seem to be somewhat similar in principle to the question involved when a paper is proved by a subscribing witness who has no recollection whatever of the transaction but who nevertheless recognizes his signature and is, therefore, willing to swear that he attested the paper in question. This is the same principle that is referred to in paragraph 3 of the opinion above referred to.

However that may be, the entries on the hospital records, composing a part of the depositions offered in this case, were clearly made at or about the time the patient was examined and in accordance with the usual and regular business custom or habit of the doctors who made them. They were, also, duly verified by such doctors, and are, therefore, clearly within the principle of *Remington Mach. Co. v. Wil. Candy Co.,* 6 *Penn.* 288, 66 *A.* 465; *Redden v. Spruance,* 4 *Harr.* 265; *Hatfield v. Perry,* 4 *Harr.* 463; *State v. Rash,* 2 *Boyce* 77, 78 *A.* 405; and *Frick v. Miller,* 7 *Boyce* 366, 107 *A.* 391. See, also, *Chamb. H. B. on Ev.,* § 1098; *Wig. on Ev.,* § 1530; *Delaney v. Framingham Gas Co.,* 202 *Mass.* 359, 88 *N. E.* 773. It may be said that it necessarily follows from the general language of the court in *Fitzgibbon's Adm'r v. Kinney,* 3 *Harr.* 317, that the use of a record of a past recollection as auxiliary to the testimony of the witness could not be used as evidence in this State.

It may be that that case was correctly decided because of lack of proof justifying the use of a copy of a foreign book account, rather than the original account, as auxiliary to the testimony of the witness; but if it stands for anything more than that it was undoubtedly practically overruled by the subsequent Delaware cases. See *Wigmore on Ev.*, § 736, note 5; *Remington Mach. Co. v. Wil. Candy Co., supra.*

It may be said that the conclusion, with regard to the records offered in this case, would, also, seem to be inconsistent with *McMahon v. Bangs,* 5 *Penn.* 178, 62 *A.* 1098, but the hospital charts offered in that case were not verified by the nurse who kept them and no explanation of her absence, other than that she was no longer in the employ of the hospital, was offered.

They were objected to on that ground and rejected, and that was the only question before the court. Some other remarks were also made by the court, but they were made without opportunity to examine the question, were not necessary to its decision, and are, therefore, not controlling in this case.

For the reasons above given, such records are proper evidence in this case, and the objection of the defendant to their admission is overruled.

Note.—In *Remington Mach. Co. v. Wil. Candy Co.,* 6 *Penn.* 288, 66 *A.* 465, 469, two separate and distinct rules of evidence were discussed by the court:

1. The rules applicable to refreshing memory.

2. The rule permitting the witness, under certain circumstances, to use a memorandum verified by him as a record of a past recollection as auxiliary to and as the embodiment of his testimony.

In considering refreshing memory, the court apparently disregarded the old rules laid down in both *Greenleaf on Ev.* and in *Stephens' Digest on Ev.,* and adopted the rule announced in *Davis v. Field,* 56 *Vt.* 426. The difference between these rules was pointed out in the note to *Terry v. Amer. Fruit Growers Ass'n,* 3 *W. W. Harr.* (33 *Del.*) 497, 139 *A.* 259. Quoting from *Davis v. Field,* the court in *Remington Mach. Co.* case said:

"There seem to be two classes of cases on this subject: (1) Where the witness, by referring to the memorandum, has his memory quickened and re-

freshed thereby, so that he is enabled to swear to actual recollection; (2) where the witness, after referring to the memorandum, undertakes to swear to the fact, yet not because he remembers it, but because of his confidence in the correctness of his memorandum."

While under both of the rules relating to refreshing memory, it is the testimony of the witness, though revived by the memorandum, that properly goes to the jury as evidence, and the paper itself is not admitted (*Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 66 *A.* 465; *Fitzgibbon's Adm'r v. Kinney*, 3 *Harr.* 317; *Redden v. Spruance*, 4 *Harr.* 265; *Terry v. Amer. Fruit Growers Ass'n*, 3 *W. W. Harr.* [33 *Del.*] 497, 139 *A.* 259, notes; *Chamb. H. B. on Ev.*, § 1098) the court pointed out that witnesses had frequently been permitted to read from the papers used by them, under the pretext that they were refreshing their memories, and perhaps in the belief that one of the rules, applicable to that subject, had been applied.

Under the second rule of evidence discussed in the *Remington* case, as is pointed out in *Grossman, Adm'r, v. Del. Electric Power Co.* (above reported), a memorandum constituting a record of a past recollection goes to the jury.

The theory on which this rule is based is that the witness "is devoid of a present recollection and, therefore, desires to use a past recollection. This he proposes to do by employing some record of this past recollection and adopting it as his present statement." *Wigmore on Ev.*, vol. 2, § 734; *Chamb. H. B. on Ev.*, § 1098.

The use of such a memorandum when verified by the witness is, therefore, in some degree, at least, based on necessity (*Wigmore on Ev.*, vol. 2, § 738); perhaps not on the same kind of necessity that is involved in the use of secondary evidence, as in the regular entry rule, but because "to reject such a record would be to reject the best and frequently the only means of arriving at the truth." *Wigmore on Ev.*, § 738, *supra*. That necessity is the basis for the use of such a memorandum is, also, specifically recognized in this State in *Redden v. Spruance*, 4 *Harr.* 265, and in *Hatfield v. Perry*, 4 *Harr.* 463.

The authorities are, however, not in exact harmony in applying that rule to particular facts. In some jurisdictions, including the

Federal courts, and perhaps in New York State, it seems that the necessity rule is applied strictly. Where so applied, the memorandum cannot be admitted if the witness actually remembers and is able to testify to all of the essential facts appearing in the memorandum which he wishes to adopt as auxiliary to his testimony. *Wigmore on Ev., vol.* 2, § 738. See,.also, *Chamb. H. B. on Ev.,* § 1098; *Stephens' Digest on Ev.,* 343, note.

This rule is, however, criticized by Wigmore in Section 738 of his work on evidence, as not being satisfactory, or workable in practice.

In the same section he advocates the admission of the memorandum, though the witness may, also, remember the essential facts appearing therein because human experience has clearly demonstrated that a record of a past recollection is in point of fact necessarily more vivid and more worthy of credit than the memory of the witness can possibly be and that the use of the memorandum is, therefore, necessary to the full and clear presentation of his testimony.

This question was not involved in *Grossman, Adm'r, v. Del. Elec. Power Co.,* but it has been considered to some extent, at least, by our courts in several cases.

As was pointed out in *Grossman, Adm'r, v. Del. Elec. Power Co.,* the court in *Redden v. Spruance,* 4 *Harr.* 265, said that

"With regard to inventories and schedules; precise dates; particular words, and other matters which the memory would not be likely to retain, a greater liberty of reference has been allowed, where the *notes were made* at or about the time of the transaction, and where the witness remembers that at the time they were made he knew them to be correct and true. This seems to be carrying the principle of substituting memorandums for the sworn recollection of witnesses far enough. It has been done from the apparent necessity of cases," etc.

In *Hatfield v. Perry,* 4 *Harr.* 463, the suit was on certain promissory notes drawn in Delaware but payable at specified banks in Pennsylvania. The testimony offered was, in part, composed of the depositions of the Pennsylvania notary who had protested such notes for non-payment and of the depositions of his clerk who apparently kept his books. The Notary deposed that the notes sued on had been presented for payment at the specified place by his clerk.

The clerk deposed as follows:

"I have no doubt but I presented the notes at the Western Bank of Philadelphia, for payment, when they * * * became due. By referring to the book of protests belonging to ———— [the notary] to whom I was then a clerk, I find that I have returned that the said notes were not paid on my demand, and that payment was refused at the bank by its officers. The signature signed to each of the certificates [of protest] is in the handwriting of ———— [the notary] and the seal is his seal as a notary public. The certificates contain the answer made by the officers of the bank when the said notes were severally presented for payment by me."

The court, among other things, said:

"The certificates of presentment, demand, and refusal, would not in themselves be evidence of these facts; but the notary and his clerk have been examined on commission, and the clerk's deposition so refers to, and incorporates, these certificates, as to make it necessary to refer to them as a part of his answers.

"The clerk's reference to the notarial book must be admitted also from necessity, as a memorandum made at the time for the purpose of evidence, by a person, and on a subject which make the admission of such evidence necessary, as the memory of a notary in full business could not retain recollection of such matters."

After stating that entries made in the regular course of business in the books of Notary were admissible to prove demand and notice of non-payment, the court, also, added,

"If the notary is living and competent to testify, it is deemed necessary to produce him. (*Nicholls v. Webb*, 8 *Wheat.* 326 [5 *L. Ed.* 628]). But if he is called as a witness *to the fact, the entry of it is not thereby excluded.* It is still an independent and original circumstance to be weighed with others, whether it goes to corroborate or to impeach the testimony of the witness, who made it."

This paragraph was quoted with apparent approval in *Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 66 *A.* 465, *supra.*

Perhaps it may be said that the memorandums referred to in *Hatfield v. Perry* and in the principles laid down in the above quotations from *Redden v. Spruance* related to details which could not be remembered by a witness.

The same might, also, be said to be true as to the details covered by the memorandums involved in *Remington Mach. Co. v. Wil. Candy Co.*, 6 *Penn.* 288, 66 *A.* 465, 470, *supra*, but it is by no means clear that the language quoted from *Hatfield v. Perry* was intended to be confined to cases of that character, and the court in

the *Remington Machine Company* case, apparently, did not so construe it.

This conclusion would seem to necessarily follow from the quotations from the Maryland and other cases cited by the court in the *Remington* case, as well as from other portions of the opinion pointing out the contentions of the attorneys for the parties to the action.

In this connection, the court, also, said:

"If the witnesses each knew they [referring to the memorandums admitted in the lower court] were correct at the time they were made, and they, or either of them, had been permitted to use them to assist the memory, and had given testimony of the quantities stated on the slips, either from memory or by reading them, it is difficult to see why the slips themselves, verified and adopted, as they were by the witnesses, were not as trustworthy, and as harmless to the defendant as the testimony of the witness would have been."

This particular question has not been specifically discussed in any Delaware cases subsequent to *Remington Mach. Co. v. Wil. Candy Co.*, but in *State v. Rash,* 2 *Boyce* 77, 78 *A.* 405, which was an indictment for perjury, the court admitted the transcribed notes of the testimony of the defendant taken on other occasions by the witnesses who were stenographers, though such witnesses had already used such notes, as a pretext at least, for refreshing their memories as to the same details for the proof of which such notes were subsequently admitted. The same thing was done in *Frick v. Miller,* 7 *Boyce* 366, 107 *A.* 391, which was an action of replevin for certain furniture.

In that case a book kept by the defendant, containing a list of the articles in controversy, and claimed by him, was admitted in evidence, though he had apparently already testified in detail as to the ownership of the same articles.

The *Remington* case was not referred to in either of these cases, but it would seem that our courts had indicated an intent to construe the necessity principle involved in the use of a record of a past recollection of a witness rather liberally, and had substantially adopted the principles advocated by *Wigmore* in *vol.* 2, § 738, of his work on evidence.