JOHN DOE, on the demise of John Wedderburn, *v.* RICHARD ROE, Casual Ejector, and Henry W. Burbage, tenant in possession.

(*First trial February* 12, 1930.)
(*Second trial October* 16, 1930.)

First trial before RICE and HARRINGTON, J. J., and a jury.

*James M. Tunnell* for plaintiff.

*Henry Ridgely* and *Charles W. Cullen* for defendant.

Second trial before HARRINGTON and RICHARDS, J. J., and a jury.

*James M. Tunnell* for plaintiff.

*Charles W. Cullen* and *Frank M. Jones* for defendant.

Superior Court for Sussex County, Action of Ejectment, No. 3, February Term, 1929.

HARRINGTON, J.: It is one of the details that helps to show adverse possession.

RICE, J., also stated that he thought the question was admissible on that ground.

Mr. Tunnell: If they do not claim that it is evidence of title but only an assertion of a claim, I will not take the time to examine the Delaware cases, and will withdraw my objection for the present.

The question was then repeated and the defendant stated that he had paid the taxes on the property in dispute.

The jury disagreed and was discharged.

■ At the beginning of the second trial, plaintiff's attorney requested the Prothonotary to produce the plots made by the surveyor in laying down his pretensions. Without offering any evidence to show that they were correct, he then stated that they had been made pursuant to a rule issued by the Court (*Rule* 92, *Sup. Ct. Rules*) and as he understood it were, therefore, in evidence, but to avoid any question he would offer them.

The defendant's attorneys objected to their admission because they had not been proved by any competent evidence.

The Court sustained the objection. *Short v. Cummins*, 5 *Harr.* 261; *Cann v. Thompson*, 5 *Harr.* 398; *Woolley's Del. Pr.*, §§ 1498, 1603, 1607, and 1609.

The plaintiff's attorney then produced evidence tending to show that such plots were correct and made from actual surveys in laying down his pretensions. He then renewed his offer and they were admitted.

■ A witness called by the plaintiff in rebuttal after testifying that he was familiar with government maps was shown a map, having a small scale, certified to by a United States Government Department. Plaintiff's attorney then read *Section* 882 of the *U. S. Revenue Act*[1] and in response to a question to that effect the witness stated that the map in question was a Government topographic map of a certain portion of Sussex County, Delaware, designated as the "Cape Henlopen Quadrangle"; that it included the lands in dispute and showed whether they were marsh or upland. For the purpose of showing that such lands were marsh lands, plaintiff's attorney then offered the map in evidence. The defendant's attorneys objected to its admission on the

[1] This section provided that "copies of any books, records, papers, or documents of any of the executive departments authenticated under the seals of such departments, respectively, shall be admitted in evidence equally with the originals thereof." (28 *USCA* § 661.)

ground that, in a controversy of a private nature, the character of the disputed land and whether marsh or upland could not be shown by a mere printed map not made by the witness and not offered as the record of a past recollection. *Stev. Dig. on Ev.*, 115, 116, and *note; Grossman v. Del. Elec. Power Co.*, 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806.

They further objected that independent of any other question such a topographic map of the general locality would not be a safe guide to show that a particular piece of land, comprising about seven acres, though covered by it, was marsh (*Stevens Dig. on Ev.*, 115, 116) ; and that the Federal statute cited by the plaintiff's attorney had no bearing on copies of records or documents the originals of which were not admissible.

The objection was sustained by the Court on both grounds.

Producing a government pamphlet which was attached to the certified map above referred to, the witness was then asked:

"Q. Is this pamphlet a record of the U. S. Government describing the soil at this place (referring to the general locality of the disputed lands) ?
"A. Yes, sir.
"Q. Does that record describe the lands in dispute?
"A. It does.
"Q. Is there any distinction between tidal and salt marsh?
"A. Not in soil classification; the terms are synonymous."

For the purpose of showing that the lands in dispute were marsh lands, the plaintiff's attorney then offered in evidence all that portion of the pamphlet that referred to tidal marshes.

Defendant's attorneys also objected to its admission because it had not been written by the witness, was not offered as the record of a past recollection (*Grossman v. Del. Elec. Power Co.*, 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806), and merely contained what the author deemed was a correct general description of the lands along the entire

coastline of Sussex County. They, therefore, contended that it violated the hearsay rule even if it was conceded to be a recognized standard treatise[1] on soils. They further contended that, like the map, it was entirely too general in its scope to be of any assistance in determining the character of the particular lands in dispute. The objection was sustained on both grounds. *Stev. Dig. on Ev.*, 115, 116; *Chamb. Handbook on Ev.*, § 877; *Wharton's Crim. Ev.*, 831, 1119; 2 *Ency. on Ev.* 583, 587; *Grossman v. Del. Electric Power Co.*, 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806.

---

[1] As to the rule in this state with respect to the use of standard works on medical jurisprudence and mental philosophy in arguing to the jury and the purpose for which such books can be used, see *State v. West, Houst. Cr. Cas.* 371.