GEORGE LITTLEFIELD *versus* JOHN S. LITTLEFIELD & *al.*

The word *beach*, must be deemed to designate land washed by the sea and its waves; and to be synonymous with shore.

The rule is, that parties to contracts are supposed to know and use language legitimately, and therefore parol evidence, that a word is used in a particular place in a different sense from its true meaning, is inadmissible.

Where land is described in the deed as containing two and an half acres of salt marsh and as being within the following bounds, and gives the boundaries as beginning at a corner by the beach, and running by a given line to a creek, and by the creek to a certain marsh, and then by the marsh to a ditch, and then by the ditch to the beach, and running by the beach to the place begun at; the land granted adjoins upon the land washed by the waves of the sea, although the quantity of land within the boundaries may exceed that named in the deed, and may not be wholly salt marsh, and although the ditch may not extend the whole distance to the beach.

THE action was trespass *quare clausum fregit.* The defence seemed to be based on the alleged want of title of the plaintiff to the land where the alleged trespass was committed.

The place of the alleged trespass, was situated between marsh land and the ordinary line of high water, as the sea ebbs and flows. It was admitted, that this land had never been enclosed, and that all persons having occasion so to do passed over it unmolested.

Several witnesses were called in defence, who testified, among other things, that the space between the marsh and high water mark, was there usually called the beach.

The defendant offered to prove conversations between the plaintiff and the witness, the grantor of the plaintiff, at and about the time of the conveyance, respecting the bounds of the lot conveyed; but as the conversation was not upon the lot, nor were its bounds pointed out, the testimony was excluded.

A copy of the description of the premises in the deed, under which the plaintiff claims title, follows: — "Two acres and a half of salt marsh, be the same more or less, contained within the following bounds, being part of the marsh commonly called Jonathan's ten acres. Beginning at Isaac Bourne's corner by the beach and run by said line to the creek; then run by the creek to Joshua Bragdon's marsh; then by his marsh to the ditch; then run by the ditch to the beach; then run by the beach to the place begun at."

The ditch extended to the sea wall, adjoining the marsh, but not to high water mark.

The cause was taken from the jury and submitted by the parties to the decision of the Court upon the testimony, or so much thereof, as may be legal testimony; and they authorized the Court to draw such inferences as a jury might properly do. If the testimony offered by the defendant and excluded, was properly excluded, judgment was to be rendered for either party, by nonsuit or default, according to their legal rights. If the testimony was improperly excluded to the injury of the defendant, a new trial was to be granted.

*Bourne,* for the plaintiff.

1. The defendant has no right to contest the plaintiff's title. He sets up no title, and the plaintiff has been long in possession. 1 Metc. 100; 23 Maine R. 542; 25 Maine R. 453.

2. As no one has had the exclusive occupation, our seizin extends to the boundaries in the deed. The boundary is the *beach* — and the *beach* means that part of the space on which the sea beats, — shore, strand, flats, beach, all have the same

meaning. *Cutts* v. *Hussey*, 15 Maine R. 257; *Storer* v. *Freeman*, 6 Mass. R. 435. By the common meaning of the word, and by the legal meaning, our land extends to high water mark.

3. Parol evidence is inadmissible to explain the meaning of the word beach. The meaning of a word can no more be explained by parol, than the meaning of a clause in a description. Roberts on Frauds, 64; 1 Phil. Ev. 487; 8 Metc. 573; 13 Pick. 264; 19 Maine R. 115; 5 Metc. 224; 10 Pick. 280.

4. The declarations of former owners can be admissible only where adverse possession is set up. 2 N. H. Rep. 372; 6 Johns. R. 21; 6 Conn. R. 139.

5. The grantor cannot be admitted as a witness to explain the meaning of his own deed. 1 Mass. R. 91; 8 Mass. R. 431; 12 Mass. R. 440; 4 Mass. R. 441.

*Bradley & Eastman*, for the defendant, contended, that the deed to the plaintiff did not convey any land, but what is properly called marsh, covered by salt marsh grass; and extends only to, and is bounded by the base of the ridge, or embankment thrown up by the sea. 8 Greenl. 85; 4 Mason, 349; 16 Maine R. 245; 6 Mass. R. 435; 3 Pick. 356; 10 Mass. R. 149; 13 Pick. 261.

The question in controversy is, in what sense the word *beach*, is to be understood in the deed, and where was the boundary intended to be fixed by the parties? We say, that the beach extends but to the shore, and that the boundary intended by the parties was the line, between the marsh and the ridge or embankment, separating the marsh from the sea. *Storer* v. *Freeman*, 6 Mass. R. 435; *Cutts* v. *Hussey*, 15 Maine R. 237. And it is remarkable, that it appears from the latter case, that in the statute of 1749, relating to Winter harbor beach, the words beach and shore, are clearly used as different and distinct, one from the other.

Where a deed is of doubtful construction, as to boundaries, the construction given by the parties themselves, by their acts and admissions, is deemed to be the true one, unless the contrary be clearly shown; and this practical construction is prove-

able by parol. 3 Met. 379 ; 1 Mass. R. 362 ; 10 Mass. R. 149 ; 1 Term R. 701 ; 6 Mass. R. 440 ; 13 Pick. 261.

The plaintiff's deed purports to convey *salt marsh*, and no other land ; and is to be confined to that.   3 Pick. 356.

The meaning of words is not to be prescribed by arbitrary judicial edicts, but is to be ascertained by popular usage.   The presumption is, that the word *beach*, was used in the deeds in the sense in which it was ordinarily used, and understood at that place, whether it accorded with strict legal accuracy or not.   The testimony is full and explicit, that the word *beach* was applied to the embankment or space between the marsh and the sea, and that alone.   14 Maine R. 185.

And such has been the sense in which the word *beach* has been used by Legislatures for a hundred years past.   Mass. Sp. Laws, Vol. 3, pages 10, 12, 14, 26, 31, 16 ; Vol. 2, page 204; Vol. 3, page 4, and appendix, p. 27, and 24, 13 ; Stat. of Maine, of 1827, c. 442 ; and it will be found, that in Massachusetts, there are twenty-four acts to prohibit cattle from feeding upon beaches, and to prohibit persons from cutting the grass growing thereon.

The opinion of the Court was drawn up by

WHITMAN C. J. — The action is trespass *quare clausum*. The place where the alleged trespass was committed, was near the sea, upon a bank of sand, where no vegetation grows ; and which the defendant alleges to be a beach ; and the documentary title of the plaintiff, appearing to be bounded seaward on the beach, that the locus is excluded from, and not included within his limits.   The plaintiff must, to maintain his action, show title of some kind to the *locus in quo*.   He does not rely upon any other than the limits embraced in a deed introduced by him.   Those begin by the beach ; and run thence from seaward to a creek ; thence by the creek to Bragdon's marsh ; thence by the marsh to a ditch ; thence by the ditch to the beach ; thence by the beach to the beginning ; thus excluding the beach.   The plaintiff contends that these boundaries carry him to high water mark, and thus include the locus.

The word beach, he insists, has a fixed and settled meaning, and indicates the land between high and low water mark ; and so is a permanent and fixed monument ; and that parol evidence is inadmissible to show that any thing else could be his boundary seaward, than high water mark ; and if he is right in his premises, viz. that beach is the land between high and low water marks, his conclusion would be undeniable, unless some other portions of his deed should show, that such was not the intention of the parties.

The term beach is defined by Webster, to be the shore of the sea, or of a lake, which is washed by tide waters and waves. Other lexicographers say it is the sea shore, the strand, the coast. Webster says the shore is the coast of land adjacent to the ocean or sea, and that strand is the shore or beach of the sea or ocean or of large lakes. Other lexicographers say, that shore is the coast of the sea, and that strand is the sea beach. C. J. Parsons, in *Storer* v. *Freeman,* 6 Mass. R. at p. 439, says, the sea shore is " all the ground between the ordinary high water mark and low water mark." And he says this question is largely considered by Lord Hale, in his treatise *de jure maris et brachiorum ejusdem* ; and his definition of sea shore is, '' that ground that is between the ordinary high water mark and low water mark." Mr. C. J. Weston, in *Cutts* v. *Hussey,* 15 Maine R. at p. 241, says, that, " by a beach, is to be understood the shore or strand ; and it has been decided, that the sea shore is the space between high and low water." If a beach is not to be so limited, it would be difficult to define its limits. In many places the same kind of diluvial matter, that composes the land between high and low water marks, extends a great distance from the sea. For instance, such is the case upon Cape Cod. In many places there, it extends from sea to sea, across the cape. On the whole, the word beach must be deemed to be land, washed by the sea and its waves ; and to be synonymous with shore.

But it is contended, that words acquire different meanings in different places, and that they must be taken to bear a meaning according to their acceptation where they may happen to

be used.   But the difficulty in such case, is to ascertain, whether the parties might not know the true meaning of the language used ; and, if they did, whether they intended to conform to it or not.   The only safe and convenient rule is to suppose parties to contracts, to know and use language legitimately.   Sometimes words have several meanings.   When such is the case we must ascertain, from the subject matter to which they relate, or perhaps from proof, the sense in which they may be used, as in the case cited in the defence, of *Stone* v. *Bradbury,* where proof was admitted to show the term bond to have been used to designate an unsealed instrument. For, in common parlance, as may be seen in the works of English lexicographers, bond means any written obligation, while in a law dictionary, it may be defined to be a deed, stipulating for the payment of money at a time and place appointed.

The defendant has introduced various acts of legislation to show that beach must mean upland.   In the first place it may be remarked, that it is not quite clear, that legislatures may not misuse language.   If it were, many of the difficulties, so often occurring in discovering what they mean, would instantly vanish.   The first and second acts cited, speak of " meadows or shores adjoining said beach," indicating that beach and shore were entirely different, the one being adjacent to the other. The next six citations speak of meadows, beaches and shores, without any indication of the meaning intended particularly to be affixed to either.   The ninth citation is of a prohibition to " cut wood, poles, brush or trees, standing and growing upon Plymouth beach."   Most people, perhaps, would require stronger proof than a legislative act to satisfy them, that wood and trees ever grew on a beach.   The tenth citation speaks of beach, hummocks and sedge ground, and prohibits cutting " trees or shrubs growing on said beach or hummocks."   Trees might grow on hummocks if always above water.   From the case of *Thomas* against *Marshfield* nothing can be gathered decisively, as to what constitutes a beach.   It is manifest that grass grew on it, such as cattle would eat ; and that such is the

case between high and low water marks is well known. But for it the cattle, upon what is often called the south shore, viz. the coasts of the old colony of Plymouth, would in the summer time, be greatly deficient of feed. And a road might well be laid out upon a beach below high water mark, that might be of great public utility. The case of *Green* v. *Chelsea*, is an authority, if any thing, against the idea, that beach is above tide water; for it is coupled with flats, and they (beach and flats,) are said to be overflowed by the tide. Finally, nothing can be gathered from these citations, whether from the statutes or cases cited, that can authorize the conclusion, that a beach is not the strand, and constituting such ground as is overflowed and washed by the sea, or the waters of great lakes.

The next question is, where must we look for the starting point in the plaintiff's deed? We must find Isaac Bourne's corner; and according to authorities, we must find it by the beach. *Pride* v. *Lunt*, 19 Maine R. 115. A stake and stones, as the corner, could not be shown to be elsewhere. We are to run from thence round to a ditch; and by the ditch to the beach; thence by the beach to the beginning.

To this, several objections occur, of considerable weight. In the first place, the deed purports to be of but two and a half acres; and the ground comprised within the above boundaries would exceed that quantity. This is no otherwise important, than to serve to indicate the intention of the parties; that it was not intended to convey so much as is embraced in the above exterior lines. In the next place, the deed speaks of the ground conveyed, as being salt marsh, and the ground within the above limits would not all be salt marsh.

In the third place, the course by the ditch is said to be to the beach. Now it does not appear that the ditch ran further than the sand embankment, to be found before reaching the beach; and which the defendant contends, is in truth the beach referred to in the deed. Such being the case, the line by the ditch could not run all the way by it to the true beach; but it is truly stated, that it ran by the ditch, and to the beach. Both branches of the statement are measurably, though per-

Littlefield *v.* Littlefield.

haps not literally, true. At any rate we must run to the beach, or we could not, afterwards, run by it to the beginning. These difficulties, however, are not greater than often occurs in opposition to what is ascertained to be the legal intendment of the parties. Old landmarks and fixed principles, in giving construction to instruments, must not be departed from. We cannot be authorized to admit every sand bank, found upon the margin of the sea, whatever the extent of it into the country may be, to be a beach. The testimony of a few of the neighbors, that it was so considered, cannot make it such. It is no uncommon occurrence, that the quantities alleged in deeds to be conveyed, are far from being accurate; nor that the land denominated arable or pasture, or other kind of land, should turn out not to be wholly such. Whatever the kind or quantity of land may be, if fixed and permanent monuments are given for its boundary, they must be allowed to have a controlling effect.

It is not perceived, that any testimony, material to the defence, was excluded.

As agreed by the parties, the defendant must be defaulted, and judgment be entered for $2,50 damages.