ALMON C. SNOW *vs.* MT. DESERT ISLAND REAL ESTATE COMPANY.

Hancock.      Opinion June 5, 1891.

*Deed.   Boundary.   Shore.   Upland.   Flats.   Colonial Ordinance, 1641-7.*

The owner of the upland adjoining tide-water *prima facie* owns to low water mark; and does so, in fact, unless the presumption is rebutted by proof to the contrary.

When the terms "the sea," or "shore," are used in a deed to designate one boundary of the parcel conveyed, they describe that side of the beach on which the sea coincides with it, and, therefore, include the beach to low water mark.

The plaintiff claimed under a deed containing the following description : "Beginning at the sea on Benjamin Ash's line; thence south on the said Ash's line to the highway; thence west on the highway ten rods to a stake; thence north to the shore parallel with said Ash's line; thence east to the first bounds mentioned." It did not appear that the grantor intended to retain the adjoining shore as distinct from the upland. *Held :* That the deed conveys to the plaintiff the flats, or shore, with the upland.

This was a real action to recover certain flats between high and low water mark at Bar Harbor. The locus as shown on the plan is marked A, B, C, and D. Both parties claimed under the same grantor whose deed is sufficiently stated in the opinion. The demandant contended that his seaward line is low water mark and the defendant that it is the high water mark. The defendant also contended that the third call in the deed stopped at D, and that, if the court should so find, the last call would

be a straight line from D to B, thus giving the demandant one half only of the locus.

*Deasy and Higgins*, for plaintiff.

*Wiswell, King and Peters, B. E. Tracy* with them, for defendants.

Beginning at the third call in the deed, viz., the stake in the highway at the northwest corner, the language is "thence north to the shore parallel with said Ash's line." This line runs to a monument, that monument is the "shore." "Shore" has a well defined and technical meaning. In *Storer* v. *Freeman*, 6 Mass. 435, the shore is defined as "that ground that is between the ordinary high water mark and low water mark." When shore is used as a boundary or monument it is the same as when any other strip or tract of land is used as a monument or boundary. The language of this deed is "to the shore." The word "to" when used in describing land is a word of exclusion. Running "to" an object excludes the object. A line running "to" land of

A, stops at his land and does not pass over any part of it.  So a line running "to the shore" stops at the shore and does not pass over any portion of it.  *Bradley* v. *Rice*, 13 Maine, 198 ; *Bonney* v. *Morrill*, 52 *Id.* 242.

There being no expression in the deed showing any intention that the north line should follow the sea or bay, as in *Pike* v. *Monroe*, 36 Maine, 309,—where the language is "bounded on said river,"—the western line of the lot terminates at high water mark.  The location of the north line being doubtful, to extend it beyond would include land to which grantor had no title,— a strong circumstance showing that the true line and the intended one was the high water line.

The first monument is the "sea," but we suggest there may be a distinction between the sea as a boundary and sea as a monument.  The parties used the word in its "untechnical" sense, using the language of Parsons, C. J., in *Storer* v. *Freeman*.  The course of the last boundary is east.  This is consistent with the point of beginning at high water mark, it is inconsistent with that point placed at low water mark.  If monuments are in doubt then the course is the next guide.  The starting point being uncertain and in doubt, the course should control.

EMERY, J.  This is a real action, to recover possession of certain flats between high and low water mark of the sea, at Bar Harbor.  The plaintiff claims under a deed containing the following description :  "Beginning at the sea, on Benjamin Ash's line ; thence south on said Ash's line to the highway ; thence west on the highway ten rods to a stake ; thence north to the shore parallel with said Ash's line ; thence east to the first bounds mentioned."  The report of the case states the question submitted to be whether the above deed conveys the flats or shore with the upland.  That is the only question argued by counsel, and the only one we now consider.

It is said that land cannot be appurtenant to land ; yet the shore or flats in front of upland are usually regarded as appurtenant to the upland.  While they may be held in private owner-

ship under our law, they are yet subject to the public right of
navigation and fishing. Annexed to the upland, they may be
of great value to the common owner. Apart from the upland,
they are rarely of any value to a private owner, who would have
no access to them except by water. The colonial ordinance of
1641-7, permitting private ownership in flats, evidently contem-
plated their annexation to the upland in ownership. The
language of the ordinance is : "It is declared that in all creeks,
coves, and other places about and upon salt water where the
sea ebbs and flows, the proprietor of the land adjoining shall
have propriety to low-water mark," &c. It is also common
knowledge that since the ordinance, the occupation of the flats
has usually followed that of the upland, and that the flats are
usually of no value without the upland. Conveyances of the
upland are commonly supposed to convey the flats.

This principle of annexation is well stated by Chief Justice
Shaw in *Doane* v. *Willicutt*, 5 Gray, 335, (cited by plaintiff's
counsel,) as follows : "In a conveyance, when a line of shore
is used as an abuttal, unexplained by circumstances, it may be
ambiguous, leaving it doubtful whether the sea side or the land
side of the shore is intended. . . . When both terms are
used, 'the sea,' or 'shore,' and used to designate one boundary,
it appears quite clear that they were intended to describe
that side of the beach on which the sea coincides with it, and,
therefore, to include the beach to low-water mark. . . . The
owner of the upland adjoining tide-water *prima facie* owns to
low-water mark ; and does so, in fact, unless the presumption is
rebutted by proof" to the contrary.

In the case before us, the deed was given in 1867 when there
was no natural separableness between the upland and its attend-
ant shore, even if there be now. Nothing appears in the case
showing any motive or reason for a separation. Nothing ap-
pears showing the beach at that date to be of any value apart
from the upland, of any value to reserve in granting the upland,
either by reason of wharves or weirs thereon, or by reason of
any other opportunity for separate occupation or quasi-cultiva-

tion like those far-reaching shores and beaches in the western part of the State, which in themselves are often more valuable than the upland.

Recurring now to the language of the deed in this case, which describes the boundary line of the conveyed parcel as "Beginning at the sea;" thence running round the parcel to "the shore;" thence to the "first bounds mentioned," and reading the words in the light of the principles and circumstances above stated, it is not difficult to determine that they were intended to describe the sea side and not the land side of the shore, and thus include the shore to low water mark. Such is our opinion. *Erskine* v. *Moulton*, 66 Maine, 280; *King* v. *Young*, 76 Maine, 76; *Stevens* v. *King*, *Id.* 197.

Of course, the owner of the upland and the adjoining shore may convey the one and retain the other. When such an intent appears, the court will give it full effect, as was done in *Storer* v. *Freeman*, 6 Mass. 435, but no such intent appears in this case. The question here submitted must be determined in the plaintiff's favor.

*Judgment for plaintiff.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and WHITEHOUSE, JJ., concurred.