THE STATE, SOPHIA E. BOWKER, PROSECUTRIX, v. ELIAS E. WRIGHT, GEORGE HAYDAY AND LEVI C. ALBERTSON, COMMISSIONERS, &c.

1. The act approved April 6th, 1889 (*Pamph. L.*, p. 206), authorizing cities on the ocean to lay out streets, drives and walks on the beach or ocean front, is constitutional.
2. The words, "beach or ocean front," include the entire beach flowed by ocean tides within the limits of the city.
3. Notice of application and proceedings must be particular.
4. Residents and freeholders in the city are not disqualified by interest to act in making assessments.

On *certiorari* to review an order made by the Circuit Court of Atlantic county appointing the defendants commissioners to estimate and assess damages for the laying out, opening and constructing drives or walks along and upon the beach or ocean front in Atlantic City, under an act of the legislature entitled "An act to authorize cities in this state, located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front, to lay out and open streets and drives, and construct public walks along and upon the beach or ocean front, to grade and otherwise improve the same, to provide the money necessary therefor, and to regulate the use thereof," approved April 6th, 1889 (*Pamph. L.*, p. 206), together with the report of the commissioners, with all proceedings touching or relating to the same.

By virtue of this act an ordinance was passed by the city council to lay out and open a street sixty feet wide, between high and low-water mark, along and upon the ocean front, within the limits of Atlantic City, from a point in the

southerly line of Caspian street, near the high-water line of Absecon inlet; southeasterly and southwesterly along said Absecon inlet to the Atlantic ocean; and thence southwesterly along the Atlantic ocean by courses and distances specified. Under this act of the legislature, and this ordinance, an application was made to the Circuit Court, three commissioners were appointed, who made their report, among other things awarding to the prosecutrix the sum of $1,200 for the damages she will sustain by the laying out of the said street, &c., which were to be in full for all damages sustained by her for lands and buildings thereon, and for damages to adjoining lands owned by her, and every other loss or damages of every kind whatsoever. On notice to the prosecutrix, and hearing of objections, this report was in all respects confirmed.

Argued at February Term, 1891, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the prosecutrix, *David J. Pancoast.*

For the defendants, *Allen B. Endicott* and *Joseph Coult.*

The opinion of the court was delivered by

SCUDDER, J. The first reason assigned for reversal is, that the act referred to is unconstitutional, because it is local and special, regulating the internal affairs of cities. The first section of the act, read in connection with the title, will determine this question. It enacts " that it shall be lawful for the common council or other governing body in the cities of this state, located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front, by an ordinance or ordinances duly passed for that purpose as herein provided, to lay out and open streets and drives, and construct public walks along the beach or ocean front, and, in like manner, to grade or otherwise improve the same, whether such street, drive or public walk be laid out, opened or constructed wholly or partly between high and low-water mark, or wholly or partly on land covered by water."

This section does not authorize the laying out and opening of streets and drives and constructing public walks in every part of Atlantic City, but limits these acts to the beach or ocean front, where they will be wholly or partly opened and constructed between high and low-water mark, or wholly or partly on land covered by water. Whether this is a peculiar feature which distinguishes these cities on the ocean from other cities in the state, so as to properly make them a class by themselves, and thus generalize the statute, is the first point in question. The ordinance passed by the common council presents a feature of the location which, it is claimed, is peculiar, and distinguishes these cities from inland cities by the singular construction which will be required to make the streets, drives and walks permanent and fit for public travel. The sixty feet street, between high and low-water mark, along and upon the ocean front, is to be laid out and opened, so that upon and over it there shall be constructed a public board or plank walk, twenty-four feet in width, of a permanent and substantial character, elevated on piles or posts. This is essential to render these walks at all time fit for public use, and to resist the washing and flow of the ocean tides and storms, to which they are exposed. They are also to be laid wholly or in part on public land below high and low-water mark, or lands covered by water. For this public land taken there can be no assessment made for benefits, or for damages, in the usual form; the care and maintenance of them will also be necessarily different from that bestowed on other highways away from the sea. This legislation is constitutional, if it properly relates to these peculiarities, and they are substantial differences. Other distinctions, which do not arise from substantial differences, so marked as to call for separate legislation, constitute no ground for supporting it. *Hammer* v. *State*, 15 *Vroom* 667; *Ross* v. *Winsor*, 19 *Id.* 95; *Clark* v. *Cape May*, 21 *Id.* 558, 561; *State* v. *Somers Point*, 23 *Id.* 32.

One of the enumerated cases in which the legislature shall not pass private local or special laws is: "The laying out, opening, altering and working roads or highways." *Const.*,

*art.* IV., § 7, ¶ 11.   But there is no prohibition in this to the classification of cities similarily situated for the laying out of roads, if all of the class be included.   The cities of the state have been held to be a class by themselves for legislation (*Anderson* v. *Trenton,* 13 *Vroom* 486 ; *Dobbins* v. *Northampton,* 21 *Id.* 496) ; and they may be subdivided by important characteristics to which the purpose of the law relates, provided they embrace all those so characterized.   Thus, it is said in the former case, above cited, from which this phrase has been taken, by way of illustration, that a statute giving to all cities bordering on tide water the power to construct docks, or to establish quarantine regulations, would be valid.   Docks are peculiar structures, because they are built out over public land into the sea for uses adapted to their location.   So in this case, these drives and walks are to be laid on lands covered by tides and water, and are peculiar in structure because of their location.

If this law were general, so as to include all the cities of the state, only those situated on or near the ocean, having a beach or ocean front, could use it, showing that they are a class distinct from other cities, and thus free from constitutional prohibition.   There is, therefore, no defect in this legislation.

It is further objected that the street to be opened by the ordinance of common council runs in one of its courses along Absecon inlet.   The lines to which reference is made are : " Thence southeasterly along said Absecon inlet to the Atlantic ocean ; thence southwesterly along the Atlantic ocean," &c. The act authorized the opening of streets and drives and the construction of public walks along and upon the beach or ocean front, &c.   The ocean front is clearly intended ; but whether the words "beach or ocean front" will include the shore of Absecon inlet is disputed.   It is argued that the words "beach or ocean front" mean the same thing, the shore fronting on the ocean, and are intended to be equivalent terms ; while, on the other hand, it is said they are separate and disjunctive.   The usual province of the conjunction "or" is to

disjoin the parts of a sentence, and while it suggests an alternative it also denotes opposition. Absecon inlet does not front directly on the ocean; it is a wide inlet from the sea, and it has a beach where the tide ebbs and flows. The beach would include the inlet if full effect is given to this word, and the words " ocean front" seem to exclude it. The expression is ambiguous, but as the first section of the act says that it shall be lawful for the common council or other governing bodies in the cities of this state located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front, by an ordinance or ordinances duly passed for that purpose, as therein provided, to lay out and construct public walks along the beach or ocean front, and as this city has both beach and ocean front within its limits, it would seem that it is not called upon to elect which it will use, but may adopt the construction most beneficial to the public. Having done this in regular form by ordinance, I am not willing to say they have exceeded the power given to them in the statute, and erred in their interpretation.

The further objection that the appointment of three commissioners, who were residents and taxpayers in the city, to assess damages, was illegal, as they were not an impartial tribunal, is not tenable. The act requires that the Circuit Court shall appoint commissioners, " who shall be disinterested residents and freeholders in the city in and for which the application is made." Such men are rightly supposed to have greater knowledge of the facts they must decide than nonresidents, and their interest, as taxpayers only, has by long usage been regarded as too remote and small to disqualify them on the ground of interest.

The public notice given by the commissioners of their appointment and meeting was not sufficient. It did not define the limits of the improvement contemplated. No mention is made of the extension of the street along Absecon inlet by ordinance, nor does it appear that any other notice was given to the prosecutrix until the report of the commissioners was before the court for confirmation, of which ten days' notice

was given her. The frequent adjournments of the commissioners' meeting from December 31st, 1889, to June 11th, 1890, without further description or notice than such as is given in general terms as found in the newspapers, were too uncertain and misleading.

For this last cause the report of the assessment of damages to the prosecutrix, and the confirmation of the report and assessment, will be set aside, but without costs.