The STATE of Delaware, upon the Relation of the Department of Natural Resources and Environmental Control and the Department of Highways and Transportation, formerly the State Highway Department, Plaintiff,

v.

Emmons B. PHILLIPS and Mae T. Phillips, husband and wife, and Blaine T. Phillips and Janet Cozart Phillips, husband and wife, Defendants.

Court of Chancery of Delaware, Sussex.

Submitted Nov. 20, 1978.

Decided March 1, 1979.

John T. Gallagher and James F. Waehler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Blaine T. Phillips, of Potter, Anderson & Corroon, Wilmington, for defendants.

HARTNETT, Vice Chancellor.

This case is presently before me on the plaintiff's ("State") Motion For Summary Judgment. This action was filed almost 12 years ago by the State which seeks to assert its claimed title to approximately 13 acres of ocean front property lying just north of the Delaware-Maryland line in Sussex County. The State contends that it has been vested with title to the land, as the sovereign, since declaring its independence from Great Britain in 1776. The claim of the defendants is now based primarily on their claimed sole and exclusive possession since 1939, and of their predecessors since at least 1912.

Two Motions For Summary Judgment were previously filed by the defendants and disposed of by prior Opinions. In their first Motion, the defendants claimed that the land in dispute remained vested in the heirs of William Penn after 1776 and never vested in the State. Chancellor Duffy, in 1973, in denying defendants' Motion, held that the title to the land in dispute passed from the heirs of William Penn to the State in 1776. *State v. Phillips*, Del.Ch., 305 A.2d 644 (1973), aff'd., *Phillips v. State ex rel. Dept. of Nat. Res. & Env. Con.*, Del.Supr., 330 A.2d 136 (1974). In the defendants' second Motion they contended that two patents granted by the State since 1776 showed on their face that the disputed land did not belong to the State. In 1976, Chancellor Quillen denied that Motion, however, holding that the legal descriptions of the two patents in question did not have as their easternmost boundaries the Atlantic Ocean, and therefore the lands granted in the patents to private owners could not have included the lands now in question. *State v. Phillips*, Del.Ch. (unreported C.A. # 276-Sussex, Jan. 2, 1976).

After the two prior decisions, and with leave of the Court, the State filed the Motion For Summary Judgment now before

me. The several contentions of the parties are discussed seriatum.

## I

Originally it was the law of this State that title by adverse possession can not be obtained against the State. See *Kempner v. Aetna Hose, Hook & Ladder Co.*, Del.Ch., 394 A.2d 238 (1978) and cases cited therein. Then in 1843 the General Assembly enacted 9 *Del.L.* 454 which amended the original Vacant and Uncultivated Lands Act, 2 *Del.L.* 1160 (1793). The 1843 Act stated *inter alia*:

> Sec. 2. And be it further enacted by the authority aforesaid, That a continued uninterrupted and peaceable possession of any lands and premises in this State for the space of twenty years, by any person or persons, or by those under whom such person or persons claim, whether by descent, devise, deed, gift, grant, assignment or otherwise howsoever, shall be and enure as a complete and effectual bar to any claim of title on the part of the said State to the said lands and premises; notwithstanding no warrant, survey, patent or grant have been made for the same, and notwithstanding nothing may have been paid to the State for or on account thereof; and in any suit on the part of the said State, or its grantees or assigns, for any such lands and premises, it may and shall be lawful for the person or persons claiming the same by virtue of such possession, to give the same in evidence under the plea of the general issue, and without pleading the same specially.

> \* \* \* \* \* \*

> Sec. 4. And be it further enacted and declared, That none of the foregoing provisions of this act shall be construed or intended to apply to any of the *salt marshes* of this State; but the same are hereby expressly excepted from the operation of this act, and the title thereto shall in no wise be affected thereby. (emphasis added)

In 1852, as will be discussed, the words "beach or shore" were added to the salt marsh exception.

In 1953 the law permitting adverse possession to run against the State was repealed by 49 *Del.L.*, ch. 386. Therefore, from 1776 until 1843 title by adverse possession could not be obtained against the State. From 1843 until 1953 it was possible to obtain title by adverse possession against the State (except for certain lands), and since 1953 it has been impossible for adverse possession to run against the State.

The defendants assert that they and their predecessors in title have been in exclusive, continued and peaceable possession, with accompanying acts of ownership, of the land in question, since at least 1912. If this is so, defendants' possession could have ripened into title prior to the 1953 repeal. Furthermore, defendants contend that the exception denying adverse possession for "other than salt marsh, beach or shore" appearing in the statutes since 1852 does not preclude their claim of title by adverse possession since they are not now claiming any land which constitutes salt marsh, beach or shore. They tacitly concede that they are not entitled to claim ownership of the beach or shore and claim that only a small portion of the lands in dispute constitute beach or shore.

Since the validity of the defendants' claim to title to the land in dispute depends in large measure on the definition of beach or shore, it is necessary to examine the history of the statute and the judicial definitions construing these words.

The preamble to the original Act relating to vacant and uncultivated lands in the State stated:

> "WHEREAS it appears to this General Assembly, that large quantities of vacant and uncultivated land are within this State, which at the present do not, and heretofore have rendered no support to government;"

thereby indicating that the purpose of that Act was to make available for private ownership vacant and uncultivated lands. 2 *Del.L.*, p. 1160 (1793). The original Act was silent as to the barring of the State's claim to lands occupied for over 20 years. In 1843

the General Assembly amended the Vacant and Uncultivated Lands Act by enacting 9 *Del.L.*, ch. 454 quoted previously, which permitted the acquisition of title against the State by adverse possession. As noted, the 1843 enactment contained an exception for salt marshes only. The exception was broadened in 1852 when the preparers of the Revised Code of 1852 rewrote the Act to read *inter alia* :

> Sec. 2. A continued, uninterrupted and peaceable possession of any land, *other than salt marsh, beach or shore*, for twenty years by any person, or by those under whom he claims, shall be a bar to any claim of title in the State to such land, although no patent or grant has been made for the same, and nothing paid to the State therefor. Ch. 2, Rev.C. 1852 (emphasis added)

The 1852 Code was adopted as positive law by the General Assembly in 1852. Rev. Code 1852, p. IV. The law remained substantially unchanged until 1953 when it was repealed by 49 *Del.L.*, ch. 386 (July 15, 1953). See § 12 Rev.C. 1874; § 12 Rev.C. 1915; § 12 Rev.C. 1935; 7 Del.C. § 4502.

The question of whether defendants can obtain title against the State by adverse possession to the lands in question therefore depends on whether these lands are salt marsh, beach or shore, within the meaning of the Statute. It is a factual question, which can only be determined at trial, whether any part of the lands in question constitute salt marsh.

## II

It has been held that the words "beach" and "shore" are deemed to be synonymous with one another. *Littlefield v. Littlefield*, Me.Supr., 28 Me. 180 (1848); *Storer v. Freeman*, Mass.Supr., 6 Mass. 435 (1810); see also *U. S. v. Pacheco*, 69 U.S. 587, 17 L.Ed. 865 (1864); and the cases collected at note 1, 17 L.Ed. 865. The U.S. Supreme Court stated in *U. S. v. Pacheco*, 69 U.S. at 590: "By the common law, the shore of the sea, and, of course, of arms of the sea, is the land between ordinary high and low water mark, the land over which the daily tides ebb and flow." Accord, *Shively v. Bowlby*, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894);

*Borax Consolidated v. City of Los Angeles*, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9 (1935). Numerous cases have defined both beach and shore as the space between the high and low water marks. *Hewitt v. Perry*, Mass.Supr., 309 Mass. 100, 34 N.E.2d 489 (1941); *Hodge v. Boothby*, Me.Supr., 48 Me. 68 (1861); *Merwin v. Backer*, Conn.Supr., 68 A. 373 (1907); *Axline v. Shaw*, Fla.Supr., 35 Fla. 305, 17 So. 411 (1895); *Storer v. Freeman*, supra; *Doane v. Willcutt*, Mass.Supr., 71 Mass. 328 (1855); *Potomac Dredging Co. of Baltimore City v. Smoot*, Md.App., 108 Md. 54, 69 A. 507 (1908); *Wood v. Hildebrand*, Md.App., 185 Md. 56, 42 A.2d 919 (1945); *Littlefield v. Littlefield*, supra; *Snow v. Mt. Desert Island Real Estate Co.*, Me.Supr., 84 Me. 14, 24 A. 429 (1891); *State v. Wright*, N.J.Supr., 23 A. 116 (1891); *Attorney General v. Central R. Co. of New Jersey*, N.J.Ch., 68 N.J.Eq. 198, 59 A. 348 (1904); *McRoberts v. Bergman*, N.Y.App., 132 N.Y. 73, 30 N.E. 261 (1892); *Bell v. Hayes*, N.Y.Supr., 60 A.D. 382, 69 N.Y.S. 898 (1910); *Town of Oyster Bay v. Stehli*, N.Y.Supr., 169 A.D. 257, 154 N.Y.S. 849 (1915).

The terms "shore" and "beach" have also been defined by Delaware Courts.

In *Harlan & Hollingsworth v. Paschall*, 5 Del.Ch. 435, 463–4 (1882), this Court said the following:

> . . . The shore (Saxon)—The coast of the sea; the bank of the river; that part of the bed lying between the top of the bank and that part of the bed where the water actually flows and which, as the water rises and falls, is land or water.

> . . . Roman Law has distinguished the *alveus* or bed of the river and the *ripa* or bank; the river itself being *aqua*, water. All above high water mark they distinguished as *ripa*, bank, and all below as *alveus*, or bed. . . .

> The same terms have the same extent in the language of our law likewise; but we distinguish by an additional name that band or margin of the river which lies between the high and low water marks,—we call it the beach or the shore.

The shore may therefore be defined as the land between the high and low water marks.

Webster thus defines "shore": "The coast or land adjacent to the ocean or sea or to a large lake or river." This word is applied primarily to the land contiguous to water, but it extends also to the ground near to the border of the sea, or of a lake, which is covered with water. We also use the word to express the land near the border of the sea, or of a great lake, to an indefinite extent, as when we say a town stands on the shore; we do not apply the word to the land contiguous to a small stream.

Chancellor Quillen discussed these *Harlan & Hollingsworth* definitions in his Opinion denying defendants' second Motion For Summary Judgment on "the patents issue", *State v. Phillips*, Del.Ch. (C.A. # 276-Sussex, Jan. 1, 1976), but he concluded: ". . . that the word 'Beach' does not as a matter of law in every context, legal or otherwise, necessarily mean land between the high and low water mark." The Chancellor based this conclusion on the last paragraph of the *Harlan & Hollingsworth* quotation set forth above. The Motion then being considered, however, dealt with the construction of the word "beach" as it appeared in the legal descriptions in the patents within which the defendant was attempting to include the disputed property.

At issue here, however, is not the construction of certain words contained in a deed, but rather construction of words as they appear in a statute. "Words used in a statute which have a definite and settled meaning at common law are presumed to be employed in the same sense, and will be so construed, unless a contrary intent clearly appears." *Hollett v. Wilmington Trust Co.*, Del.Super., 172 A. 763 at 764 (1934). Use of the common law meaning of words is further bolstered when they have received judicial construction in conformity with the common law meaning. As has been demonstrated above, it is abundantly clear that common law definitions of beach and shore, as construed by the U.S. Supreme Court and the Courts of the states along the Atlantic seaboard, are as the defendants assert—that space between the high and low water mark. I so hold. The intention of the General Assembly to reserve the land between the high and low water mark from defeasance by adverse possession is consistent with the common law doctrine that the sovereign always holds title to this space. *Martin v. Waddel*, 41 U.S. 367, 10 L.Ed. 997 (1842). My holding is also consistent with the purpose of Vacant and Uncultivated Lands Act which was to encourage private ownership of vacant lands. Therefore, if adverse possession can be established for the statutory period to the lands in question, other than that part of the lands which constitute the space between the high and low water mark or salt marsh, then the defendants can successfully defeat the State's claim to these lands.

The burden is, of course, upon the party relying upon title by adverse possession, but once that burden is met it is incumbent on the holder of record title to establish that possession or use was permissive. *David v. Steller*, Del.Supr., 269 A.2d 203 (1970). The evidence must show by a preponderance of the evidence that possession was open, notorious, hostile and exclusive for the 20-year period. *Steller v. David*, Del.Super., 257 A.2d 391 (1969) rev'd on other grounds, *David v. Steller*, supra. Whether this burden is met, however, is a question of fact which cannot be disposed of in this Motion For Summary Judgment. *Lavin v. Scascitelli*, Conn.Super., 172 Conn. 8, 372 A.2d 127 (1976); 3 Am.Jur.2d, *Adverse Possession* § 101. Therefore, the issue of adversity and the extent of the defendants' possession remain a question of material fact sufficient to defeat the State's summary judgment motion and consequently, an issue to be determined at trial. *Judah v. Delaware Trust Co.*, Del.Supr., 378 A.2d 624 (1977).

III

The defendants have also asserted the doctrine of presumed or lost grant as a bar to the entry of summary judgment for

the State. This doctrine is long established as an appropriate means to quiet titles where there has been long possession and has been recognized by the U.S. Supreme Court and Delaware Courts. *U. S. v. Fullard-Leo*, 331 U.S. 256, 67 S.Ct. 1287, 91 L.Ed. 1474 (1947); *U. S. v. Chavez*, 175 U.S. 509, 20 S.Ct. 159, 44 L.Ed. 255 (1899); *Fletcher v. Fuller*, 120 U.S. 534, 7 S.Ct. 667, 30 L.Ed. 759 (1887); *Walls' Lessee v. M'Gee*, Del.Super., 4 Harr. 108 (1844); *Tubbs v. Lynch*, Del.Super., 4 Harr. 521 (1847); *Delaware L. & Dev. Co. v. First and Central Presb. Church*, Del.Supr., 147 A. 165 (1929). See also cases of other jurisdictions collected at 3 Am.Jur.2d, *Adverse Possession* § 3; 2A C.J.S. *Adverse Possession* § 317 *et seq.*

The doctrine of presumed grant was stated by the U.S. Supreme Court in *Fletcher v. Fuller*, 120 U.S. at 551, 7 S.Ct. at 676 as follows:

[T]he doctrine, as we have seen from the authorities cited, is that the presumption of a grant is indulged merely to quiet a long possession which might otherwise be disturbed by reason of the inability of the possessor to produce the muniments of title which were actually given at the time of the acquisition of the property by him or those under whom he claims, but have been lost, or which he or they were entitled to have at that time, but had neglected to obtain, and of which the witnesses have passed away, or their recollection of the transaction has become dimmed and imperfect; and hence, as a general rule, it is only where the possession has been actual, open and exclusive for the period prescribed by the statute of limitations to bar an action for the recovery of land, that the presumption of a deed can be invoked.

A shorter, more succinct statement of the rule appears in *U. S. v. Fullard-Leo*, 331 U.S. at 271, 67 S.Ct. at 1294:

[B]y the weight of authority, as well as the preponderance of opinion, it is the general rule of American law that a grant will be presumed upon proof of an adverse, exclusive, and uninterrupted possession for 20 years, and that such rule will be applied as a presumptio juris et de jure, wherever, by possibility, a right may be acquired in any manner known to the law.

There is a strong public policy of common law behind such a presumption. Mr. Justice Storey articulated this policy well in *Ricard v. Williams*, 7 Wheat. 59, 109, 5 L.Ed. 398, 410 (1822):

Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration that the facts are such as could not according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in, the party in possession.

This is also in conformity with another long recognized policy of common law, that of ". . . assign[ing] everything capable of ownership to certain and determined owners." *State v. Pennsylvania Railroad Co.*, Del.Super., 228 A.2d 587 (1967), aff'd., *State ex rel. Buckson v. Pennsylvania Railroad Co.*, Del.Supr., 267 A.2d 455 (1969). The net result of these policies is that it is not necessary to believe a conveyance was in fact made in order for the trier of fact to presume a conveyance. If the evidence leads to the conclusion that the conveyance might have been executed, and that its existence would be a solution to the difficulties arising from its non-execution, then this is sufficient to presume a grant. *Fletcher v. Fuller*, supra; 4 Tiffany, Real Property § 1136 p. 701 (3rd ed. 1975).

The State's reliance on *Love v. Eastham*, Tex.Sup., 137 Tex. 462, 154 S.W.2d 623 (1941) and *Bruni v. Vidaurri*, Tex.Supr., 140 Tex. 138, 166 S.W.2d 81 (1942) is misplaced. In *Duke v. Houston Oil Co. of Texas*, Tex. App., 128 S.W.2d 480 (1939), which the State cited to support its contention that acquiescence by the State is an essential element in presumed grant cases, the Texas Appeals Court stated that the policy of the State is to extend rather than restrict the

application of the presumption of a deed. Furthermore, the U.S. Supreme Court has not recognized acquiescence as an essential element of the doctrine. The Court posited in *U. S. v. Fullard-Leo*, supra, that in order to apply the presumed grant doctrine affirmatively, the possession must be under a claim of right, actual, open and exclusive. No mention of acquiescence by the owner is made.

Delaware has recognized the doctrine of presumed or lost grant for at least 130 years. In a case which arose just before the General Assembly authorized adverse possession to run against the State by 9 *Del.L.* 454, the Superior Court in *Walls' Lessee v. M'Gee*, 4 Harr. 110 (1844) charged the jury on the doctrine of presumed grant:

. . . [A]s a general principle, acts of limitation will not run against the State; nor can there be adverse possession, strictly speaking, against the State such as can be against an individual; yet there are cases where from length of possession—rightful possession—a presumption will arise against the king, or against the State, to quiet the title. The most solemn papers have been presumed after a great lapse of time: grants; charters; even acts of parliament, have been presumed. So in this country grants and patents from the State are presumed after a great lapse of time in conformity with lawful possession.

The doctrine was also recognized and applied in *Tubbs v. Lynch*, Del.Super., 4 Harr. 521 (1847), wherein the Court instructed the jury that a grant might be presumed to have been made by the State if the defendant or those under whom he claims, had had uninterrupted enjoyment and possession of the land in dispute for a period upwards of 40 to 50 years. Other cases in which the doctrine has been acknowledged are *Delaware L. & Dev. Co. v. First and Central Presb. Church*, Del.Supr., 147 A. 165 (1929); *Miller v. Town of Seaford*, Del.Ch., 194 A. 37 (1937).

■ As a general rule, the presumption of a grant or deed is one of fact, and not of law and is therefore subject to rebuttal.

*Fletcher v. Fuller*, supra; 2A C.J.S. *Adverse Possession* § 325. In some circumstances, however, it may become a presumption of law such as where, in the absence of any contrary facts, no other conclusion could be reached; *Id.* Where, however, the presumption is rebuttable, the burden of rebutting it is on the party denying its applicability—here, the State. 2A C.J.S. *Adverse Possession* § 326, citing *Coxe v. Lehigh Valley Railroad Co.*, Pa.Supr., 398 Pa. 424, 158 A.2d 782 (1960).

■ The doctrines of adverse possession and presumed grant are very similar in nature, requiring, in many respects, identical proof. Furthermore, the burdens of proof and rebuttal are the same. In the present case the evidence to be heard at trial regarding both these doctrines is substantially the same. It may, however, be unnecessary to consider the presumed grant argument because adequate proof of adverse possession for the statutory period is sufficient to protect the defendants' possession and claim thereby rendering the presumed grant doctrine inapplicable. As Mr. Justice Storey said:

In general, it is the policy of courts of law, to limit the presumption of grants to periods analogous to those of the statute of limitations in cases where the statute does not apply. But when the statute applies it constitutes ordinarily a sufficient title or defense independently of any presumption of a grant, and therefore it is not generally resorted to.

*Ricard v. Williams*, 7 Wheat. at 110, 5 L.Ed. at 410. Actually the doctrine of presumed grant has little or no relevancy where adverse possession is permitted to run against the State by statute.

## IV

Both parties have made the argument that the case sub judice is moot because of the doctrines of res judicata or stare decisis. The State contends that *State v. Wienski*, Del.Ch. (unreported C.A. # 274-Sussex, April 26, 1971) is res judicata as to the issue of ownership of parcels of land shown to be public lands on the "Pepper Survey", (a

legislatively authorized survey made in 1929 pursuant to 24 *Del.L.*, ch. 12, 1907). This argument, however, is without merit. While ownership of certain public lands was determined in the *Wienski* case, that fact alone is not res judicata as to the case at bar.

 "Res judicata has been stated to be the conclusive effect of an existing final judgment rendered on the merits without fraud or collusion by a court of competent jurisdiction upon the parties and their privies, as to all rights, questions and facts there in issue, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Tusso v. Smith*, Del. Ch., 156 A.2d 783 (1959), aff'd., Del.Supr., 162 A.2d 185 (1960). Res judicata also applies to defenses which were not raised, but which could have properly been considered and determined in the prior action. 46 Am. Jur.2d, *Judgments* § 431, citing *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); see also *Foltz v. Pullman*, Del.Super., 319 A.2d 38 (1974). The defendants in the present case were not parties in *Wienski*, however.

 There does exist an exception to the normal party and privity requirements of res judicata in the case of in rem actions: "A judgment in rem has been said to constitute an exception, as to the property involved, to the rule . . . that a judgment is binding only on the parties to the action and their privies." 50 C.J.S. *Judgments* § 910c(3). Therefore as to the res, a judgment in rem generally has been held to be conclusive and binding upon all the world. *Wilmington Housing Authority v. Nos. 500, 502 & 504 King Street, Etc.*, Del. Super., 273 A.2d 280 (1970); *Poole v. Newark Trust Co.*, Del.Supr., 8 A.2d 10 (1939). But, except as to the persons who have actually litigated a factual question, a judgment in rem does not bind personally nor is it conclusive as to the fact determined. *E.*

*B. R. Corporation v. PSL Air Lease Corporation*, Del.Supr., 313 A.2d 893 (1973); as stated in the Restatement of the Law, *Judgments*:

§ 73. *Proceedings with Respect to Property.*

(1) In a proceeding in rem with respect to a thing the judgment is conclusive upon all persons as to interests in the thing.

(2) A judgment in such a proceeding will not bind anyone personally unless the court has jurisdiction over him, and it is not conclusive as to a fact upon which the judgment is based except between persons who have actually litigated the question of the existence of the fact.

Stated another way, a judgment in rem is conclusive, with regard to its effect on the res in establishing the status of a person or thing or title to property as to all the world but only as to parties with respect to findings of fact. *Gerhardt v. Miller*, Mo.App., 532 S.W.2d 852 (1975). See also *In Re Four Seasons Securities Law Litigation*, 370 F.Supp. 219 (W.D.Okl.1974).[1] The res in *Wienski* was not, however, the res now in question. The *Wienski* res was a 2.14 acre parcel located within parcel number 2 of the Pepper Survey, lying between the Conforts Pasture and the Derrickson's Venture patents, about one mile from the lands here in dispute. Therefore, the ownership of that 2.14 acre parcel, which was a *factual* determination, would not be binding upon the defendants here since they were not parties to the *Wienski* case. *E. B. R. Corp. v. PSL Air Lease Corp.*, supra; *Gerhardt v. Miller*, supra. Indeed, *Wienski* is irrelevant to the present controversy.

 But assuming, arguendo, that the res in *Wienski* included the lands now claimed by defendants, the in rem exception would still not preclude the present defendants, not parties to the *Wienski* action, from asserting a defense not raised in the former action. No party in *State v. Wienski*, supra, could possibly have raised the question

---

1. The res judicata effect of an in rem judgment against the interest of a person not subject to the jurisdiction of the Court may have been modified by *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). See *Arden-Mayfair, Inc. v. Louart Corp.*, Del.Ch., 385 A.2d 3 (1978).

of adverse possession as to the land here in dispute since none of the parties in *Wienski* were in possession of the lands claimed by the present defendants. In order to assert adverse possession, one must be in actual possession of the land claimed. 2 C.J.S. *Adverse Possession* § 30 citing *North Woods Development Corp. v. Klement*, Wis.Supr., 24 Wis.2d 387, 129 N.W.2d 121 (1964); see also *Steller v. David*, supra.

■ The defendants, on the other hand, contend that if any case is to be held to be res judicata to the present controversy, it must be *State v. Banks and Phillips*, Del.Super., (C.A. # 89, 1970), another condemnation action, rather than *State v. Wienski*, supra. This argument also is without merit. At the bottom of page 4 of the Order in *State v. Banks and Phillips* the following limitation appears:

> The above order shall not be construed to be a determination of any boundary disputes between any of the parties to C.A. 89, 1970, or C.A. 90, 1970, in connection with lands not involved in the above condemnation proceedings.

The question involved in *Banks* was apparently a determination of the boundaries and ownership of the lands taken for the widening of the highway and no others. Therefore, the only boundary which *State v. Banks and Phillips*, supra, could have a res judicata effect upon is the boundary along the highway, not the boundary along the ocean; the latter boundary being in dispute here. Consequently, judgment entered in the former case does not have any effect on the present case.

## V

■ The State also argues that if *State v. Wienski*, supra, is not res judicata, it is stare decisis as to the present dispute. This argument is also without merit. The prerequisites necessary for the application of the doctrine of stare decisis are: a judicial opinion by the court, on a point of law, expressed in a final decision. Generally the decision or opinion must also be reported. 20 Am.Jur.2d, Courts § 189. Stare Decisis *is applicable* only to questions of law, unlike res judicata, which is applicable to questions of both law and fact. 20 Am.Jur.2d, *Courts*

§ 189 citing *Board of Educational Lands and Funds v. Gillett*, Neb.Supr., 158 Neb. 558, 64 N.W.2d 105 (1954). Furthermore, the question of law must have been decided and not merely considered in the prior case. 20 Am.Jur.2d, supra, § 190 citing *U. S. v. Mitchell*, 271 U.S. 9, 46 S.Ct. 418, 70 L.Ed. 799 (1926). It therefore follows that a case which merely settled factual questions and articulated or decided no question of law cannot be stare decisis as to a subsequent case.

■ In the Letter Opinion of January 20, 1971, and the Order of April 26, 1971, in the *Wienski* case, no legal question was determined. The parties to the present action have so stipulated for purposes of the present Motion: "The dispute of the mentioned 2.14 acres in the case of *State v. Wienski* was resolved by a trial of the facts; the Court decision thereon cited no legal authority nor did it announce any principle of law." Furthermore, the facts in the present case are fundamentally different from those in the *Wienski* case. Here the issue is adverse possession, a defense not raised in *Wienski*. Where the facts are essentially different, stare decisis does not apply, because a sound principle applied to one set of facts may be entirely inappropriate when applied to slightly varied set of facts. 20 Am.Jur.2d, *Courts* § 191 citing *Ward v. Baskin*, Fla.Sup., 94 So.2d 859 (1957).

Since *State v. Banks and Phillips* was also a determination solely of a factual issue and articulated no legal principle, it too cannot be stare decisis to the present controversy. The decisions in *State v. Wienski*, supra, and *State v. Banks and Phillips*, supra, therefore are not stare decisis to the present case.

## VI

The State next contends that the defendants may not question the accuracy of the public land survey made in 1929 by Thomas Pepper on behalf of the Public Lands Commission and pursuant to authority of the General Assembly. 25 *Del.L.*, ch. 2; 27 *Del.L.*, ch. 5; and as resurveyed in 1955 by Fred Ruyter for the State Highway Department pursuant to 50 *Del.L.*, ch. 396.

The State apparently is claiming that the Pepper Survey conclusively established, in some way, that the lands here in question belong to the State. It is difficult to follow this argument since the Pepper Survey itself contains no legend to show that the tract in question belongs to the State. Nor did the Pepper Survey purport to show possession by those claiming title adverse to the State. Defendants' case now rests on a claim of title by adverse possession or by presumed grant. The lines shown on the Pepper Survey are not relevant to those issues. All the Pepper Survey shows is the metes and bounds of the ancient patents and grants. The Ruyter Survey is merely a resurvey of the Pepper Survey and also does not even deal with questions of possession.

 It is unquestioned that a government does have the power to make and correct surveys of the public lands and the decisions of the governmental authority in making grants based on the surveys are not subject to collateral attack. That situation is not present in the case sub judice, however, since the Pepper Survey was made many decades after the grants. See 63 Am.Jur.2d, *Public Lands* § 39; 73 C.J.S. *Public Lands* § 31. As stated in *Cragin v. Powell*, 128 U.S. at 698–699, 9 S.Ct. 203, 206, 32 L.Ed. 566 (1888):

> That the power to make and correct surveys of the public lands belongs to the political department of the government, and that, while the lands are subject to the supervision of the general land-office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding, and that the latter have no concurrent or original power to make similar corrections, if not an elementary principle of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient.

The reason for this rule, as stated in *Cragin v. Powell*, supra, at 699, 9 S.Ct. at 206, is:

> [T]hat great confusion and litigation would ensure if the judicial tribunals were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made than the department of public lands could do.

A survey of public lands, made pursuant to governmental authority, does not ascertain boundaries, however, it creates them. *Phelps v. Pacific Gas & Electric Co.*, Cal. App., 84 Cal.App.2d 243, 190 P.2d 209 (1948); *Cox v. Hart*, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 (1922); 63 Am.Jur.2d, *Public Lands* § 39.

A survey or resurvey of public lands also cannot injure the rights of private owners bordering on public lands. 63 Am.Jur.2d supra § 41; *U. S. v. Reimann*, 504 F.2d 135 (10th Cir. 1974). The Pepper Survey, if it was in fact the type of survey mentioned in *Cragin v. Powell*, supra (which it apparently is not), would merely be presumed to be correct as to the lines shown on the survey. This fact, however, has no bearing on the defendants' right or ability to assert their defense of adverse possession. Even if the Pepper Survey, arguendo, is presumed to be correct, it was made in 1929 and there was sufficient time for defendants to acquire title by adverse possession after 1929 and before 1953 when the statute permitting adverse possession to run against the State was repealed.

The defendants contend that the only accurate survey made for the area in dispute was that made, at their request, by Wingate & Eschenbach and recorded November 30, 1960. This survey located many of the old boundary markers and either replaced them or remarked them in a more permanent manner. No real inconsistencies exist, however, between the lines shown on the Pepper Survey and the Wingate & Eschenbach survey. If major inconsistencies did exist between the metes and bounds on the two surveys, the Pepper Survey might control. See *Gleason v. White*, 199 U.S. 54, 25 S.Ct. 782, 50 L.Ed. 87 (1905); 12 Am.Jur.2d, *Boundaries* § 111. This issue, however, is not before me. Both surveys show substantially the same boundaries for the tract in dispute. Neither survey is relevant as to

whether defendants have obtained title to the tract by adverse possession or presumed grant. That is a factual issue to be determined at trial.

## VII

■■■■ The State also contends that defendants are estopped by the recitations in their own chain of title from challenging the State's title to the public lands. It contends that certain conveyances executed by defendants, or their predecessors in title, recognize the existence of State lands and the defendants are therefore now estopped from denying State ownership of the land in dispute.

The State is asserting an estoppel by deed doctrine which does not support its factual contentions. The term is defined in 28 Am. Jur.2d, *Estoppel and Waiver* § 4 as ". . . a bar which precludes one party to a deed and his privies from asserting as against the other party and his privies any right or title in derogation of the deed, or from denying the truth of any material facts asserted in it." Furthermore, "[a]n estoppel by deed is operative only between the parties to the deed and their privies; strangers to the deed are not bound, nor can they invoke the estoppel." *Robinson v. Ortiz*, Del.Super., 100 A. 408, 409 (1917). Accord: *John Deere Plow Co. of Baltimore v. Pierce Hardware Co.*, Del.Super., 36 A.2d 369 (1943). While these two cases did not involve deeds to real property, they did involve actions on a mechanics lien with respect to a surety bond and for payment under a sealed contract (both formal written instruments or "deeds"), to which the estoppel by deed doctrine is also applicable. See 28 Am.Jur.2d, *Estoppel and Waiver* § 4; 31 C.J.S. *Estoppel* § 20. Two other ancient Delaware cases state the principal of estoppel by deed but are unclear as to the issue of its effect on nonparties. See *Inskeep v. Shields*, Del.Super., 4 Harr. [Del.] 345 (1845) and *Doe d. Jefferson v. Howell*, Del.Super., 6 Del. 178 (1855). For a discussion of the general rule of law holding that an estoppel by deed only affects parties to the instrument, see: 31 C.J.S. *Estoppel* §§ 46, 47, citing numerous cases. The State is not a party to any of the deeds in defendants'

chain of title and is therefore without standing to assert the doctrine of estoppel by deed in this case.

Additionally, one claiming title to land by adverse possession is not bound by, nor subject to an estoppel by deed. *Carver v. Jackson, Ex. Dem. Astor, et al.*, 29 U.S. 1, 7 L.Ed. 761 (1830); *Sabariego v. Maverick*, 124 U.S. 261, 8 S.Ct. 461, 31 L.Ed. 430 (1888); See also, 28 Am.Jur.2d, *Estoppel and Waiver* § 21. Since the defendants now assert their claim to title to the land in dispute by adverse possession, the doctrine of estoppel by deed is not pertinent.

## VIII

In summary, neither party's attempts to prevail by relying on res judicata or stare decisis is meritorious. The requisites for invoking either doctrine are conspicuously absent, nor is the doctrine of estoppel by deed appropriate. Furthermore, the defendants have set forth a sufficient basis for believing that they may have a valid claim of title by adverse possession because it appears that the land in dispute may have long been in the possession of the defendants and their predecessors. Should the evidence presented at trial sufficiently establish the defendants' adverse possession to part or all of the approximately 13 acres in dispute (except as to that portion of the lands which constitute salt marsh or beach or shore—that is, the space between the high and low water mark), the State's assertion of title must fail. Notwithstanding that the disputed land is, in common parlance, part of the "beach", in a legal context the 13 acres to which title is disputed, does not, for the most part, include that area which is between the high and low water mark—the accepted judicial and common law definition of "beach" or "shore".

The State's Motion For Summary Judgment is therefore denied. So ordered. Hopefully, this matter is at long last now ready for trial.